# MARGARET HOWARD

## v.

# THE ALEXANDRIA HOSPITAL

Record No. 921106

April 16, 1993

Present: All the Justices

*Julia H. Brasfield (J. Hunt Brasfield; Ashcraft & Gerel,* on briefs), for appellant.
*Fred C. Alexander, Jr. (McGuire, Woods, Battle & Boothe,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

Margaret Howard filed this medical malpractice action against The Alexandria Hospital seeking recovery in damages for injury sustained in October 1989. The plaintiff alleged that during surgery performed upon her at the hospital, "instruments were used which were not adequately sterilized." The plaintiff asserted that the defendant, acting through its agents, servants, and employees, negligently failed to adhere to the appropriate standard of care in assuring sterility of the instruments.

As a result, the plaintiff alleged, she sustained "pain, suffering, anguish, inconvenience, and discomfort." She claimed that she underwent "medical procedures that have been unpleasant, distasteful, painful, debilitating, and worrisome." She further asserted that she has suffered "increased anxiety in the extreme . . . and has been otherwise subjected to emotional distress inflicted upon her by the acts and omissions herein complained of."

In its grounds of defense, the defendant denied the plaintiff's allegations. Subsequently, however, in responses to requests for admissions, the defendant conceded that it negligently failed in its duty to properly sterilize the instruments and that it negligently failed to warn the plaintiff's surgeon about the unsanitary instruments. The defendant also admitted pretrial that a Medical Malpractice Review

Panel, when considering the plaintiff's claim against the defendant, unanimously concluded that the evidence supported a finding that the defendant failed to comply with the appropriate standard of care and that such failure was a proximate cause of the alleged damages.

At the conclusion of the plaintiff's evidence in a February 1992 jury trial, the court below sustained the defendant's motion to strike the plaintiff's evidence. The basis of the motion was that the "plaintiff's evidence, as a matter of law, failed to establish any physical injury to plaintiff sufficient to support a claim of emotional distress." The plaintiff appeals from the April 1992 summary judgment order dismissing the action.

The question presented is whether the trial court erred in sustaining the defendant's motion to strike and in entering summary judgment.

The factual record in this appeal is comprised of the responses to requests for admissions and a Rule 5:11(c) written statement; we do not have the benefit of a transcript of the trial testimony. From the information we have been provided, however, there appears to be little conflict in the facts at this stage of the case.

On October 12, 1989, the plaintiff entered the defendant hospital for a planned overnight stay for the purpose of having carpal tunnel surgery performed on her right wrist. About three months earlier, she had similar surgery on her left wrist at the same hospital. That surgery was uneventful and involved a one-night hospital stay.

While in the recovery room on October 12, the surgeon advised the plaintiff there was "a possibility she had been operated on with unsterile instruments." Apparently, the nurse in charge of the autoclave used to sterilize the instruments negligently monitored the equipment.

The plaintiff "experienced an immediate fear of several diseases." She asked to be administered "an HIV test" and "asked about the possibility of getting AIDS." She feared infection, dying, and being unable to be "around" her family or to "touch" them.

While the surgeon felt there was "very little risk" of viral infection occurring, his "big concerns" were that plaintiff could develop "Hepatitis B, HIV, Staph virus and Tetanus." Accordingly, he asked an infectious disease specialist to treat the plaintiff in the hospital. This physician ordered that plaintiff receive antibiotics intravenously. According to the plaintiff, the physicians "referred to blanket coverage, to get any germ she might come in contact with."

The plaintiff remained hospitalized until October 15 for treatment, necessitated by use of the "poorly sterilized or unsterilized instruments." During this period, the plaintiff experienced migraine headaches (a preexisting condition), nausea, and vomiting. The intravenous line had to be removed and replaced when "it began to burn." She received "pain shots" every four to six hours. She had blood drawn "frequently."

Upon release from the hospital, the plaintiff was told that she must have "an HIV test" in six months "before she was out of the woods" with reference to developing that virus. The plaintiff had this test after six months and it was negative. She stated that, in the interim, "I was scared to death; I didn't want to contaminate people or be a burden on anybody."

Following the hospitalization, several additional medications were prescribed for the plaintiff. For the next several days, she was unable to "keep medication down"; she vomited continuously. Her mouth, nose and sinuses became "raw," and she experienced fever, sweating, and chills. She developed vaginal discharge caused by "the strong antibiotic" prescribed.

The medical testimony showed that the plaintiff's "symptom complex was attributable to Pseudomembranous Enterocolitis which in her case was a side effect of the antibiotics, which were prescribed for her as a consequence of the use of the unsterile instruments." The testimony was that the plaintiff's symptoms and problems resulted from the "antibiotic therapy" that was "necessarily prescribed" for the plaintiff "as a result of the hospital's negligence." One physician testified that it was "reasonable" for the plaintiff "to be in some fear of infection for six months." In fact, however, the plaintiff did not develop any disease from the surgical procedure.

Confronted with this evidence, the defendant persuaded the trial court that this routine malpractice action based on professional negligence was actually a suit based solely upon a claim for negligent infliction of emotional distress. In ruling that the plaintiff's evidence, as a matter of law, did not establish "any physical injury to plaintiff sufficient to support a claim of emotional distress," the trial court adopted the defendant's theory. This was error.

█ The defendant's argument actually is a contention that the plaintiff sustained no direct physical injury, only emotional disturbance. But the plaintiff's evidence, at the very least, establishes a prima facie case of injury.

■ The term "injury" means "positive, physical or mental hurt to the claimant." *Scarpa* v. *Melzig*, 237 Va. 509, 512, 379 S.E.2d 307, 309 (1989) (quoting *Locke* v. *Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981)). Clearly, as a result of the hospital's use of inadequately sterilized instruments, the plaintiff sustained positive, physical and mental hurt.

■ As the direct result of the wrong, the plaintiff's body was invaded by intravenous tubes, needles administering "pain shots," and instruments used to withdraw blood. She experienced the physical pain and discomfort of headache, nausea, vomiting, fever, chills and unusual sweating; she developed a "raw" mouth, nose, and sinus. Her "symptom complex" was due to enterocolitis, a side effect of the antibiotic therapy "necessarily prescribed" because of the hospital's negligence.

■ In addition to the physical pain and discomfort, the plaintiff sustained, as a direct result of the wrong, mental anguish and emotional distress in the form of fear for her own well-being and worry about possible contamination of friends and family.

In sum, to argue that the plaintiff established mere emotional disturbance absent physical injury is to ignore the evidence in this case; the defendant's motion to strike should not have been sustained.

Consequently, the judgment in favor of the defendant will be reversed and the case will be remanded for a new trial on all issues.

*Reversed and remanded.*