John J. MARCHICA, Plaintiff–Appellee,

v.

**LONG ISLAND RAILROAD COMPANY,**
Defendant–Appellant.

No. 773, Docket 93–7521.

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1993.

Decided July 29, 1994.

1198

Leon D. Lazer, Melville, NY (Pamela D. Armstrong, Lazer, Aptheker, Feldman, Rosella & Yedid, of counsel), for defendant-appellant.

Michael Barasch, New York City (Angelo Busani, Altier & Barasch, of counsel), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Certain words when directed at a person deliver such a dread message as to strike terror in that person's heart. AIDS, a modern word, less than 20 years old, is accompanied by many myths and misconceptions; it also carries with it in the public's mind such an image of inevitable death as to bring home that terror. After John J. Marchica's hand was stuck by a discarded hypodermic needle with blood in its syringe, he feared he

would develop Acquired Immune Deficiency Syndrome (AIDS). This fear was exacerbated by the fact that Marchica could not determine who had used the discarded needle and therefore whether or not he had been exposed to the human immunodeficiency virus (HIV), the disease that causes AIDS. The incident occurred when Marchica, then 31–years old, was working as a welder for the Long Island Railroad Company (LIRR, railroad or defendant). Marchica sued the LIRR under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1988), and the jury found the LIRR partly liable for Marchica's emotional distress. The LIRR now appeals a judgment entered May 4, 1993 in the Eastern District of New York (Spatt, J.) awarding Marchica $126,000.

On this appeal, we must decide whether Marchica's alleged fear of developing AIDS was actionable under FELA, so that his jury award for the railroad's tort of negligent infliction of emotional distress may stand. Because in our view FELA encompasses a cause of action for negligent infliction of emotional distress based on a fear of developing AIDS, and because plaintiff produced sufficient evidence to support the jury's award of damages for this tort, we affirm.

## BACKGROUND

### A. Facts

In setting forth the facts found in the trial record, we review them in a light most favorable to plaintiff because he obtained a favorable jury verdict. See, e.g., Johnson v. Celotex Corp., 899 F.2d 1281, 1286 (2d Cir.), cert. denied, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). Marchica worked as a welder for the LIRR in 1989. During the fall of that year it was discovered that an open metal grating set over a shaftway at the LIRR's Hempstead station in Nassau County, Long Island, New York was unfastened. The grating could be lifted easily and, when open, gave access to a shaftway leading to a basement window of a trainman's room. Vagrants had opened the grating, crawled through the four foot shaftway, broken the window and gained access to the trainman's room. Drug paraphernalia consisting of hypodermic instruments and crack vials was often found on the floor and in the environs of the Hempstead station, which was reputed to be a center for drugs, illegal aliens and prostitution. In light of this, the railroad wanted the metal grating over the shaftway secured.

Plaintiff, because he was a welder, was dispatched with co-workers on October 25, 1989 to do the job. When the crew began welding the grate, sparks from their acetylene torches fell into the bottom of the shaft and onto an accumulated cover of leaves, paper, glass, and other debris. The debris began to smolder. Marchica volunteered to clear it out, and putting on heavy duty welding gloves to protect his hands from the heat and the glass, went down into the trainman's room and began to push the smoldering debris aside. Unfortunately, and despite the protection of his heavy gloves, a hypodermic needle lying hidden among the pile of refuse, suddenly stabbed plaintiff's hand. Upon turning his hand over he saw a hypodermic needle sticking in the palm of his right hand.

One of plaintiff's co-workers testified he saw blood coming from the puncture wound in Marchica's hand, and also stated he observed blood in the hypodermic syringe. The co-worker called a supervisor to report the injury and was told to bring Marchica to the nearest hospital, and that plaintiff should report to the LIRR medical department afterwards. Taking the needle, which had been put into a paper bag, plaintiff went to the emergency room of Winthrop University Hospital. There he was advised to have a tetanus and hepatitis shot and to get a test for HIV.

Afterwards, when Marchica reported to the LIRR's medical department, he was told the instructions given him by Winthrop physicians concerning the HIV test were ridiculous and that he should just go home and wash his hands with warm soapy water. Nonetheless, Marchica followed the orders of Winthrop and had an AIDS test a couple of days later. On a return visit to the LIRR medical department several months after the accident, a LIRR physician instructed Marchica to have a repeat HIV test. Without bothering to conduct tests of the needle or

the blood that had been observed in the syringe to determine whether these instruments were in any way contaminated, the railroad's medical department as a matter of policy disposed of the hypodermic needle and syringe to prevent the spread of infectious diseases.

Plaintiff was advised by a physician to abstain from having relations with his wife, and to be tested for HIV. He had tests done one month, six months and one year from the date of the October 25, 1989 incident. In November 1989 Marchica began seeing a psychologist because he was having difficulty sleeping, experiencing nightmares, and suffering from irritability. His wife and co-workers observed him on different occasions crying and vomiting. One co-worker estimated that plaintiff lost 30 pounds following his injury. After approximately one month of treatment, he was referred to a psychiatrist who prescribed several anti-depressants. During the course of his treatment Marchica learned that the second HIV test taken in May 1990 was negative. His final blood test taken two years later was also negative.

### B. *Prior Proceedings*

In June 1992 plaintiff brought suit against the LIRR pursuant to FELA, alleging that the railroad was negligent in failing to provide him with a safe place to work, and more particularly in failing to maintain the premises at the Hempstead Railroad Station in a reasonably safe condition, and that its negligence caused both the physical and psychological injuries he sustained. The railroad moved for summary judgment, declaring there was no evidence that plaintiff was exposed to the HIV virus or was infected with it. The district court denied defendant's motion.

After acknowledging that there was no authority in point, the trial court held that "FELA does encompass a cause of action for fear of contracting the AIDS virus where the basis of the claim is a documented physical injury sustained by the plaintiff." *Marchica v. Long Island R.R.*, 810 F.Supp. 445, 449 (E.D.N.Y.1993). The case therefore proceeded to trial. Under the rule it adopted when it denied the LIRR's motion for summary judgment, the trial court allowed the jury to determine causation and damages, placing no limit on the time a plaintiff's fear is reasonable. The jury returned a verdict finding plaintiff 55 percent culpable, the LIRR 45 percent culpable, and awarding plaintiff $225,000 for past pain, suffering and emotional distress, and $55,000 for future damages. Because defendant was 45 percent culpable for the total jury award of $280,000, judgment was taken against it for $126,000. From this judgment the railroad appeals.

### DISCUSSION

On appeal the LIRR argues, first, that the district court erroneously permitted recovery for past and future emotional distress because under a proper legal standard, fear of developing AIDS would be unreasonable as a matter of law when plaintiff has not proven exposure to the disease. It advocates a rule that would require a plaintiff to prove exposure plus a reasonable medical probability of developing the disease in order to recover for the mental distress associated with the fear of developing AIDS. Under such a standard, the LIRR contends, plaintiff should not have been allowed to recover for his fear of developing AIDS because the testimony revealed to a medical certainty plaintiff was not exposed to the HIV virus.

Second, defendant contends Marchica failed to inform himself as to how HIV is transmitted. It advocates a "due diligence" requirement under which a plaintiff must seek information and become familiar with the realities of the disease in order to ensure that the fear is objectively rational.

The LIRR urges, third, that even if exposure is not a requirement to state a claim for negligent infliction of emotional distress under FELA based on a fear of developing AIDS, recovery should be limited to the time between the possible exposure and when the plaintiff could have learned to a medical certainty that he had not been exposed or would not develop the disease. In the following discussion we deal with the points defendant raises.

I Common Law Cases Delineate Bounds of FELA Recovery

Congress enacted FELA so that railroad employees who were injured due to the negligence of their employer or of a co-worker would have a remedy. The remedy was intended to be broad and Congress prohibited employers subject to liability under the Act from limiting that liability through contract or otherwise. *See Atchison, T. & S.F.R.R. v. Buell,* 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987). Section 1 of FELA provides in part:

> Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... resulting in whole or in part from the negligence of [the carrier]
>
> ....

45 U.S.C. § 51 (1988). In order to recover under FELA, a plaintiff must prove (1) he or she sustained an injury, (2) while employed by a carrier engaged in interstate commerce, (3) due to the carrier's negligence, and (4) that such negligence played a role in plaintiff's injury. The employment and negligence requirements of FELA need no discussion. We turn to whether plaintiff who failed to prove exposure to AIDS suffered an actionable injury. Because the scope of FELA is a legal issue, our review of the district court's conclusion that emotional distress is a cognizable injury under that statute is *de novo. See Sheerbonnet, Ltd. v. American Express Bank Ltd.,* 17 F.3d 46, 48 (2d Cir. 1994), *petition for cert. filed* (May 27, 1994).

FELA admits of a broader recovery than may be obtained under common law negligence. Because, as the Supreme Court instructs, FELA is remedial in nature, it has been liberally construed to effectuate Congress' objectives. *See Buell,* 480 U.S. at 562, 107 S.Ct. at 1413–14. Those objectives were to remove the traditional defenses to tort liability and to allow recovery in meritorious cases. *Id.* at 561, 107 S.Ct. at 1413. With this aim in mind, federal courts, informed by common law principles, delineate the bounds of recovery under FELA. *See id.* at 568, 107 S.Ct. at 1417. We turn then to examine common law principles respecting emotional harm.

A. *Common Law Principles Recognizing Tort of Negligent Infliction of Emotional Distress*

It has long been accepted by scholarly writers that if a negligent actor's conduct results in a physical injury for which there is liability, the actor is also liable for whatever emotional harm stems from the physical injury. *See* Restatement (Second) of Torts § 456 (1965). One kind of emotional harm for which recovery may be had is a plaintiff's apprehension as to the effects of the physical injury received. *See Prosser and Keeton on the Law of Torts* § 54, at 362–63 (W. Page Keeton et al. eds., 5th ed. 1984). Further, recovery for emotional harm does not depend on the seriousness or extent of the initial physical injury. *See, e.g., Borras v. Sea–Land Serv., Inc.,* 586 F.2d 881, 885 (1st Cir.1978) (defendant liable for unforeseeable emotional disturbance resulting from the tortious conduct resulting from throwing spoon at plaintiff which caused but minor bodily harm). A majority of states now recognize a separate cause of action for negligent infliction of emotional distress. *See Buell,* 480 U.S. at 569 & n. 20, 107 S.Ct. at 1418 & n. 20.

1. *Physical Impact.* At first, common law cases in state courts permitted recovery for emotional harm only when the plaintiff suffered a physical injury or impact that led to the emotional distress. Some states still insist on that requirement. *See, e.g., Howard v. Alexandria Hosp.,* 245 Va. 346, 429 S.E.2d 22, 24–25 (1993) (plaintiff operated on with unsterile instruments made out *prima facie* case of physical injury sufficient to support a claim of emotional distress for fear of developing AIDS where her body was invaded by intravenous tubes and needles giving pain relief and by instruments withdrawing blood); *Bodine v. Federal Kemper Life Assurance Co.,* 912 F.2d 1373, 1376 (11th Cir. 1990) (Florida law generally requires plaintiff suffer physical impact to recover for negligent infliction of emotional distress), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991). But, even in those

states, it takes very little trauma to justify recovery for the tort of negligent infliction of emotional distress. *See, e.g., Deutsch v. Shein,* 597 S.W.2d 141, 146 (Ky.1980) (plaintiff's exposure to x-rays was sufficient physical contact to support a claim of emotional distress). And, in the majority of jurisdictions the physical injury or impact test has been discarded and recovery is now permitted in a broader range of circumstances.

■ 2. *Zone of Danger.* In place of a physical injury requirement, some states apply a zone of danger test, allowing recovery where plaintiff has been *threatened* with physical injury by the defendant's conduct, and was in reasonable fear of injury, whether or not the plaintiff was actually impacted or suffered such physical injury. *See, e.g., Kimelman v. Colorado Springs,* 775 P.2d 51, 52 (Colo.Ct.App.1988) (denying recovery for emotional distress to plaintiffs who saw family member's casket fall headlong into grave, because they were not in the zone of danger), *cert. denied,* 493 U.S. 981, 110 S.Ct. 512, 107 L.Ed.2d 514 (1989); *Farrall v. Armstrong Cork Co.,* 457 A.2d 763 (Del.Super.Ct.1983); *Rickey v. Chicago Transit Auth.,* 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983).

■ 3. *Bystander Test.* The bystander test, a variation on the zone of danger test, is followed in some jurisdictions and permits a plaintiff witnessing the death or severe injury to a family member to recover, even though not in the zone of physical danger. *See, e.g., Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 915–16, 920–21 & n. 5 (1968) (mother could recover for emotional distress caused by witnessing death of daughter even though there was no physical impact and she was not in the zone of physical danger).

■ 4. *Manifestation of Physical Injury.* The common law of other states imposes a more expansive physical manifestation test, granting recovery when the plaintiff's emotional injury is severe enough to manifest itself in a physical injury. *See, e.g., Stites v. Sundstrand Heat Transfer, Inc.,* 660 F.Supp. 1516, 1526 (W.D.Mich.1987) (under Michigan law plaintiff seeking recovery for fear of cancer must show that the "emotional dis-

tress has manifested itself in definite and objective physical injury").

5. *Foreseeability Test.* A minority of states have done away with all formal tests and allow recovery for severe mental distress that was reasonably foreseeable. *See, e.g., In re Hawaii Fed. Asbestos Cases,* 734 F.Supp. 1563, 1568 (D.Haw.1990) (Hawaii law limits claims for negligent infliction of emotional distress to actions that would foreseeably inflict serious emotional distress on the reasonable person); *Dempsey v. National Enquirer,* 702 F.Supp. 927, 930 (D.Me.1988) (no recovery in suit against tabloid because not reasonably foreseeable that publication would cause plaintiff severe emotional distress).

■ The Supreme Court recently held that causes of action for negligent infliction of emotional distress are cognizable under FELA. *See Consolidated Rail Corp. v. Gottshall,* ——— U.S. ———, ———, 114 S.Ct. 2396, 2406–08, 129 L.Ed.2d 427 (U.S.1994). But the Court limited recovery to those plaintiffs who meet the common law zone of danger test, that is, "those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at ——— – ———, 114 S.Ct. at 2399–400. It reasoned that this test best reconciled the state common law cases limiting potential liability with the remedial objectives of the federal statute. *See id.* at ———, 114 S.Ct. at 2408–10. Under this test, "[r]ailroad employees thus will be able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact." *Id.* at ———, 114 S.Ct. at 2411.

We believe Marchica's claim meets this test. He sustained a puncture wound from a discarded hypodermic needle as a result of LIRR's negligent conduct. Because he suffered a physical impact, Marchica is entitled to receive compensation for all injuries—physical and emotional—proximately caused by the physical impact. Further, his emotional distress manifested itself physically in post traumatic stress disorder, accompanied by sleeplessness, weight loss, vomiting, rash-

es and anxiety, shortly after he sustained the physical impact. And his emotional injury was reasonably foreseeable, as it was of the sort that a person in his circumstances would ordinarily experience.

### B. Common Law Fear-of-Developing-Disease Cases

1. *In General.* In its first challenge to the judgment, the railroad asserts the traditional negligent infliction of emotional distress analysis is inappropriate, and urges us instead to follow the specific jurisprudence employed in fear-of-developing-disease cases. Those cases generally hold as a prerequisite to. recovery for emotional distress that a plaintiff prove actual exposure to a disease and a reasonable medical probability of later developing it. *See, e.g., Harper v. Illinois Cent. G. R.R.,* 808 F.2d 1139, 1140 (5th Cir. 1987) (per curiam) (no recovery under Louisiana law for mental anguish based on fear of future health problems absent evidence of exposure to chemicals). Some courts also require a plaintiff to show the exposure caused a present injury, and that future injury is reasonably certain to occur, or that the emotional distress suffered by plaintiff manifested itself physically. *See, e.g., Bubash v. Philadelphia Elec. Co.,* 717 F.Supp. 297, 300 (M.D.Pa.1989) (worker who briefly had been exposed to low level radiation did not suffer physical injury entitling him to compensation for emotional distress under Pennsylvania law); *DeStories v. Phoenix,* 154 Ariz. 604, 744 P.2d 705, 709 (App.1987) (no recovery to plaintiffs who had been exposed to asbestos dust absent physical injury or illness, or physical harm resulting from the emotional distress).

█ 2. *Inapplicable where Physical Injury Present.* Yet, as is made clear in a case heavily relied upon by defendant, the fear-of-future-disease analysis applies only "[w]ith respect to infliction of emotional distress absent physical injury or contact." *Nesom v. Tri Hawk Int'l,* 985 F.2d 208, 210 (5th Cir. 1993) (applying Louisiana law in fear of contracting a disease case).

█ Proof of exposure to a contaminated substance, or exposure plus manifestation of emotional distress or probable future injury, are substitute means for providing a guarantee of the merits of a plaintiff's claim, where no physical injury has been incurred. *See id.* at 210–11 (denying recovery absent proof of exposure to disease causing agent because "[s]uch circumstances do not provide a sufficient indicia of reliability"). Since Marchica suffered an actual physical injury, the rule governing fear of future disease is inapposite and the traditional negligent infliction of emotional distress analysis applies.

Had Marchica merely touched the discarded needle and become concerned about the possibility of developing AIDS, the case would stand on a very different footing. But because Marchica's emotional distress was the direct result of a documented physical injury and was reasonably foreseeable in light of the fact that he may have been exposed to HIV by way of the needle puncture, he was not required to prove actual exposure to the disease in order to state a ·viable cause of action. While the jury was entitled to consider the lack of proof of exposure in ascertaining whether Marchica's fear was reasonable, the lack of such proof did not entitle defendant to judgment as a matter of law.

### C. Fear-of-Developing-AIDS Cases

1. *Actual Exposure.* We now pass to the fear-of-developing-AIDS cases. We recognize that in the recent wave of emotional distress cases based on a fear of developing AIDS, several courts have, as in other fear of developing disease cases, required plaintiff to prove actual exposure to the disease as a prerequisite to recovery. Again, these cases are distinguishable primarily because plaintiffs did not suffer a physical injury. *See Funeral Servs. by Gregory, Inc. v. Bluefield Community Hosp.,* 186 W.Va. 424, 413 S.E.2d 79 (1991) (no recovery to mortician who touched HIV-infected decedent without proof of actual exposure to disease), *overruled in part on other grounds by, Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993); *Neal v. Neal,* 873 P.2d 871 (Idaho 1994) (absent proof that husband or his mistress was HIV-infected, no recovery for plaintiff-wife for emotional distress based on fear of developing AIDS where plaintiff's

husband had an affair); *Ordway v. County of Suffolk,* 154 Misc.2d 269, 583 N.Y.S.2d 1014 (Sup.Ct.1992) (no recovery for doctor who performed surgery on AIDS infected patient where no proof of channel of transmission and no allegation of physical injury); *Doe v. Doe,* 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.Ct.1987) (no recovery for wife in suit against husband who had homosexual affair where no proof of exposure to HIV virus). *But cf. Johnson v. West Va. Univ. Hosps., Inc.,* 186 W.Va. 648, 413 S.E.2d 889 (1991) (damages for emotional distress based on fear of developing AIDS recoverable against hospital where plaintiff bitten by AIDS-infected patient because plaintiff able to prove physical injury and actual exposure).

2. *Actual Exposure Plus Likelihood of Developing AIDS.* Even where exposure was shown to exist, recovery was precluded in a number of cases because the actual likelihood of developing AIDS was remote. Again, in none of these cases did plaintiffs— unlike the instant plaintiff—suffer a precipitating physical injury. *See Petri v. Bank of New York Co.,* 153 Misc.2d 426, 582 N.Y.S.2d 608 (Sup.Ct.1992) (mere exposure to AIDS from intercourse with infected partner insufficient to provide rational, non-speculative basis for fear of developing the disease because no proof of physical injury); *Lubowitz v. Albert Einstein Medical Ctr., N. Div.,* 424 Pa.Super. 468, 623 A.2d 3 (1993) (no cause of action for fear of developing AIDS where in vitro fertilization took place in donated placental serum later testing HIV-positive, where when re-tested donor's blood proved negative and plaintiff had not alleged physical injury); *cf. Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 840 P.2d 288 (App.1992) (no recovery despite actual exposure to HIV virus, where no evidence of resulting physical injury).

■ After examining these cases, we are unable to agree with defendant that there is a common law rule in fear-of-developing-AIDS cases that proof of exposure and a medical likelihood of developing the disease is required in all circumstances. Rather, the common law rule to be gleaned is the same as it is with the other fear-of-developing-disease cases, that is to say, the exposure requirement—plus actual likelihood of developing the disease—simply is a means of ensuring the genuineness of the claim in situations where the plaintiff would not be able to satisfy the traditional tests of genuineness in negligent-infliction-of-emotional-distress cases. Because Marchica satisfies the traditional zone of danger test adopted by the Supreme Court in the FELA context, these fear-of-developing-AIDS cases are inapplicable.

■ 3. *Injury Plus Exposure.* The railroad points in addition to a handful of fear-of-developing-AIDS cases where recovery was denied even though plaintiff suffered a precipitating injury, because there was no proof of actual exposure to the HIV virus. These cases held that emotional distress was unreasonable as a matter of law, absent proof of exposure. *See Burk v. Sage Prods., Inc.,* 747 F.Supp. 285 (E.D.Pa.1990) (no recovery for paramedic pricked by hypodermic needle where user of needle unknown and therefore exposure to HIV not proven); *Hare v. State,* 173 A.D.2d 523, 570 N.Y.S.2d 125 (2d Dept.) (hospital employee bitten by patient rumored to have AIDS could not recover emotional distress damages for fear of AIDS because no proof of actual exposure), *appeal denied,* 78 N.Y.2d 859, 575 N.Y.S.2d 455, 580 N.E.2d 1058 (1991); *Carroll v. Sisters of Saint Francis Health Servs., Inc.,* 868 S.W.2d 585 (Tenn.1993) (plaintiff stuck by several discarded hypodermic needles could not recover for emotional distress damages on fear of developing AIDS because unable to prove exposure to HIV virus).

But not all courts have applied so rigid an actual exposure test and we decline to do so. Some courts only require plaintiff to allege a specific incident of possible exposure that could lead to a reasonable fear of developing AIDS. *See Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (1993) (patients operated on by surgeon with AIDS could recover for mental distress though unable to prove actual exposure); *Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695 (Sup.Ct.1991) (recovery for negligent infliction of emotional distress based on fear of developing AIDS after needle prick by discarded hypodermic needle allowed where claim tied to a distinct

event that would cause a reasonable person to develop a fear of AIDS); *Howard*, 429 S.E.2d at 24–25 (plaintiff operated on with unsterile instruments and later treated intravenously, given pain shots and frequent blood tests established *prima facie* case of injury sufficient to support a claim of emotional distress based on a fear of developing AIDS, though no proof of exposure and no injuries as a result of the use of the instruments); *cf. Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367 (N.D.Ill.1988) (plaintiff whose hemophiliac husband contracted AIDS from defendants' antihemophilic factor, alleged facts sufficient to place her in the zone of danger, but did not state cause of action under Illinois law, because she did not allege a physical injury or illness resulting from the emotional distress).

■■■■ It is quite apparent from the recitation of the inconsistent decisional law that this area of the law is in a developing stage. In any event, the scope of FELA is "a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws." *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949). Although we are not bound by common law principles, they must be accorded weight in our analysis. *See Gottshall*, —— U.S. at ——, 114 S.Ct. at 2403–05. We adopt the approach of those cases just discussed which take a more flexible view because they are most consistent with FELA's remedial nature. Thus, a FELA plaintiff who has suffered a physical impact may recover for a fear of developing AIDS if the impact caused by the defendant's negligence occurred under circumstances that would cause a reasonable person to develop a fear of AIDS. The circumstances surrounding Marchica's puncture wound fulfill these requirements, and therefore his claim is cognizable.

## II Due Diligence

The second point defendant makes is that where a claim of emotional distress is founded on the fear of developing a disease, the plaintiff must exercise due diligence to become familiar with the realities of the disease and defendant should not be held liable for emotional distress to the extent the plaintiff's fear is based on ignorance. Had Marchica educated himself about HIV and AIDS, defendant insists, he would not have had a rational basis for his fear.

In support of its due diligence argument defendant cites two cases, *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985), and *In re Hawaii Federal Asbestos Cases*, 734 F.Supp. 1563 (D.Haw.1990). In *Gideon*, the court explained that under Texas law, "failure to secure medical treatment bars recovery of those damages that would have been averted had proper treatment been obtained or had medical advice been followed." 761 F.2d at 1139. While this ruling is unremarkable as a general principle of law, it does not apply to the present case. Plaintiff sought medical treatment immediately after the puncture wound, and followed the medical advice of more than one physician that he be tested for HIV.

*In re Hawaii* applied Hawaii's reasonable person standard for recovery of emotional distress and held that plaintiffs' fear of cancer following exposure to asbestos would not be reasonable absent knowledge that the exposure had caused a functional impairment. *See* 734 F.Supp. at 1569–70. The court went on to state: "A reasonable person, exercising due diligence, should know that of those exposed to asbestos, only a small percentage suffer from asbestos-related physical impairment...." *Id.* at 1570. Again, we agree with the general proposition that a plaintiff may only recover for damages proximately caused by a defendant's breach of duty. But we are unable to embrace the notion that a reasonable person, punctured by a discarded hypodermic needle with blood in it, in a location known to be frequented by drug users, exercising due diligence, would not fear developing AIDS. Just the opposite is true; any reasonable person would have such fear.

In the vast literature on AIDS it is repeatedly stated that HIV is spread by the blood or bodily fluids of one person being transmitted to another, and that the sharing of needles is a means of transmission. *See, e.g.,* John K. Watters et al., *Syringe and Needle Exchange as HIV/AIDS Prevention*

*for Injection Drug Users,* 271 J.Am.Med. Ass'n 115 (1994) ("sharing of contaminated injection paraphernalia is a major route for transmission of [HIV] in the United States"); M. Levy et al., *Improper Infection–Control Practices During Employee Vaccination Programs—1993,* 271 J.Am.Med. Ass'n 182 (1994) ("patient-to-patient transmission of HIV has occurred when needles and syringes were reused without being properly sterilized or were inadvertently reused between patients"); Geoffrey Cowley, *AIDS Without Needles or Sex,* Newsweek, Dec. 20, 1993, at 106 ("most of us can recite the truism that HIV spreads through sex and shared needles"); Geralyn M. Franklin et al., *AIDS in the workplace: current practices and critical issues; acquired immune deficiency syndrome,* 30 J. Small Bus.Mgmt. 61 (1992) ("the virus is predominantly spread through sexual contact and through the sharing of contaminated needles and syringes by intravenous drug users").

Evidence presented to the jury revealed that Marchica was advised to be tested for HIV, and even the LIRR medical department considered the needle that punctured Marchica's palm to be infectious. Plaintiff's medical expert on HIV and AIDS testified that the medical community was still exploring precisely how the virus is transmitted and, he added, that in his opinion the disease could be transmitted through a needle that has been used and discarded. From this evidence the jury was entitled to find there was a rational basis for plaintiff's fear of developing AIDS.

Moreover, in the FELA context the traditional concept of proximate cause is supplanted by the less stringent standard that there be some causal relation, no matter how slight, between the injury and the railroad's breach of duty. *See Gallick v. Baltimore & O. R.R.,* 372 U.S. 108, 116, 83 S.Ct. 659, 664–65, 9 L.Ed.2d 618 (1963). The plaintiff only need show that the employer played a part in bringing about the injury. *See Rogers v. Missouri Pac. R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Under FELA the right of the jury to decide the issue of causation must be "most liberally viewed." *See, e.g., Eaton v. Long Island R.R.,* 398 F.2d 738, 741 (2d Cir.1968). Hence, Marchica presented sufficient evidence to create a jury question under FELA as to whether LIRR's negligence played a part in bringing about his physical and emotional injuries.

### III   Future Emotional Distress

As its last point, the railroad declares the jury's $55,000 award for future damages has no basis in the record. Specifically, it contends that it is unreasonable as a matter of law for a plaintiff to fear developing AIDS after a point in time when there is proof to a medical certainty that he has not been exposed to, nor will he contract the disease. In other words, recovery should be limited to the period from the time of possible exposure to that point when plaintiff knew he was not exposed to HIV. Since at the time of trial Marchica had tested negative for HIV three times over a period of three years, any continuing emotional distress stemming from a fear of developing AIDS, the LIRR maintains, would be unreasonable as a matter of law.

We agree that once there is proof to a medical certainty that plaintiff has not been exposed to and will not develop the disease, any continuing fear of developing AIDS is unreasonable. *Accord Faya,* 620 A.2d at 337. But we are unable to say on this record that there was no basis for the jury to award $55,000 for future emotional distress. A FELA plaintiff is entitled to recover for all past, present and probable future harm attributable to the defendant's tortious conduct, including pain and suffering and mental anguish. *See, e.g., Hagerty v. L & L Marine Servs., Inc.,* 788 F.2d 315, 317, *modified,* 797 F.2d 256 (5th Cir.1986). The trial judge instructed the jury that only if it found any of plaintiff's injuries were permanent could it award compensation for future emotional distress and future loss of enjoyment of life.

Marchica presented evidence showing that he developed post traumatic stress disorder soon after he suffered the puncture wound, and that he would continue suffering from the disorder and the accompanying

symptoms of weight loss, vomiting, rashes, and tachycardia for the rest of his life. Dr. J. David Gassman, plaintiff's expert in psychology testified, for example, that post traumatic stress disorder is a permanent, recurring phenomenon, and that the symptoms would occur throughout Marchica's life. This and other evidence in the record provided an ample basis for the jury's award of $55,000 for future emotional distress.

## CONCLUSION

For the reasons stated therefore the judgment of the district court is affirmed.