OPINION
On September 6, 1996, Timothy R. Smalley filed a complaint in the Franklin County Court of Common Pleas against Norfolk and Western Railway Company ("N W"). Mr. Smalley had been employed by N W as a carman and averred N W was liable for certain negligent acts in violation of the Federal Employers' Liability Act ("FELA"), Section 51, et seq., Title 45, U.S.Code. Specifically, Mr. Smalley averred he was injured in the course of his employment when he was sprayed with a chemical solvent. On December 23, 1997, Mr. Smalley filed a first amended complaint, averring that in addition to the above, he was regularly and continuously exposed to a variety of toxic chemicals.
On November 24, 1998, a stipulation was filed by the parties which stated:
 Plaintiff contends that he sustained a psychological injury as a result of his alleged exposure to Safety-Kleen during the course of his employment at Norfolk Western Railway Company. All claims asserting that Plaintiff sustained actual physical injury as a result of exposure to Safety-Kleen or other chemicals during the course of his employment at Norfolk Western Railway Company are hereby withdrawn.
On November 30, 1998, N W filed a motion for summary judgment. N W contended Mr. Smalley could not demonstrate he was placed within the "zone of danger" as required in claims under FELA for negligent infliction of emotional distress. Mr. Smalley filed a memorandum contra. On December 29, 1998, the trial court rendered a decision, granting N W's motion for summary judgment. A judgment entry was journalized on January 12, 1999. Mr. Smalley (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
 That the Trial Court erred in granting Summary Judgment to Defendant based upon a pre-trial ruling that Plaintiff, Timothy R. Smalley, had not suffered a physical impact or physical injury sufficient to allow him to obtain recovery under the Federal Employers' Liability Act for psychological and emotional distress damages resulting from exposure to toxic chemicals in the work place.
Appellant contends he raised a genuine issue of material fact as to whether he could recover under FELA for negligent infliction of emotional distress. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. MentorSoccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citingHorton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
Section 1 of FELA, Section 51, Title 45, U.S. Code, provides that every common carrier by railroad is liable to any person who suffers injury while employed by the carrier that results in whole or in part from the negligence of any officer, agent or employee of such carrier. Vance v. Consol. Rail Corp. (1995), 73 Ohio St.3d 222, 227. What constitutes negligence for purposes of FELA is a federal question, and federal decisional law governs. Id. The essential issue involved in the case at bar is whether or not appellant raised an issue under the zone of danger test set forth by the United States Supreme Court in ConsolidatedRail Corp. v. Gottshall (1994), 512 U.S. 532, 114 S.Ct. 2396 andMetro-North Commuter RR Co. v. Buckley (1997), 521 U.S. 424,117 S.Ct. 2113. For the reasons stated below, we conclude that appellant raised a genuine issue of material fact sufficient to withstand summary judgment.
In Gottshall, the United States Supreme Court recognized a claim under FELA for negligent infliction of emotional distress.512 U.S. at 549-550. In determining the scope of availability of such a claim, the Supreme Court balanced common law principles with the remedial nature of FELA. The result of such balancing was the so-called "zone of danger" test which limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct or who are placed in immediate risk of physical harm by such conduct. Id. at 547-548. Under the test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself or herself. Id. at 556. A railroad employee will be able to recover for emotional injuries caused by negligent conduct that threatens the employee imminently with physical impact. Id.
In Buckley, the Supreme Court considered what constituted "physical impact." The Buckley case involved a railroad worker who had been exposed to asbestos for three years.117 S.Ct. at 2116. During the course of those three years, the worker attended an asbestos awareness class and became fearful of developing cancer. Id. The circuit court interpreted "physical impact" as including a simple physical contact with a substance that might cause a disease at a future time, as long as the contact was of a kind that would cause fear in a reasonable person. Id. at 2117. The Supreme Court disagreed with this interpretation and stated that "physical impact," as referred to in Gottshall, does not include a simple physical contact with a substance that might cause a disease at a substantially later time where that substance threatens no harm other than the disease-related risk. Id. The Supreme Court went on to state that the words "physical impact" do not encompass every form of physical contact, and they do not include a contact that amounts to no more than an exposure (such as the exposure to asbestos which poses some future risk of disease and which contact causes emotional distress only because the worker learned he may become ill after a substantial period of time). Id. at 2118.
In the case at bar, appellant asserts he showed a "physical impact" and that such impact was beyond mere exposure. The evidence shows that on September 9, 1993, appellant was working for N W (hereinafter "appellee") as a carman. Part of his duties included painting numbers on cars. Appellant was cleaning paint off of stencils and paint brushes with a chemical called "Safety-Kleen." Appellant was wearing thin gloves and a paper mask. The evidence shows that there were no heavy-duty aprons or respirators available, and the gloves available for use were inadequate. Appellant was splashed on his left side with Safety-Kleen. Appellant experienced burning on the site of the splash, and his skin turned a deep aqua-blue color. Appellant took a shower immediately after the incident, but he still experienced burning and his skin still looked the same. The mark on his skin was approximately six to eight inches around. Appellant had the mark for "quite a while," and it eventually got smaller and went away. Appellant did not return to work until approximately February 1994, and he continued to work until September 1994.
Soon after the incident, appellant began experiencing symptoms such as loss of sense of taste and smell, fatigue, severe headaches, blurred vision, night sweats, back and leg pain, memory loss and sexual dysfunction. Within one month of the incident, James R. Mullins, M.D., diagnosed appellant with chemical hepatitis caused by the chemical splash. In February 1994, Mark Kehres, M.D. concurred with this diagnosis, stating appellant likely developed a temporary chemical hepatitis as a result of exposure to lacquer thinner. Also in February 1994, Douglas H. Linz, M.D., informed Dr. Mullins that he believed appellant had suffered from anemia associated with pneumonia and not chemical hepatitis. Appellant saw a series of doctors thereafter for various conditions allegedly relating to chemical exposure.
Appellant also experienced anxiety and depression following the incident. Appellant eventually saw a psychologist, James F. Phifer, Ph.D. In his report, Dr. Phifer noted that appellant had a psychological evaluation in June 1995 because appellant was seeking disability on the basis of "bad nerves." At the time of Dr. Phifer's evaluation of appellant (April and May 1996), appellant described himself as depressed, unhappy, nervous and irritable. Appellant complained of panic attacks and stated he was preoccupied with his health and thought the chemical exposure was going to kill him. Dr. Phifer diagnosed appellant with generalized anxiety disorder, panic disorder, sleep terror disorder and male erectile disorder.
In his deposition, Dr. Phifer testified that appellant had a very significant emotional reaction to the incident involving the Safety-Kleen. Dr. Phifer stated that appellant perceived the event of the chemical splashing on him as very much a life-threatening event. Dr. Phifer testified that appellant was a fairly anxious person in the first place and was particularly anxious about physical matters, and an emotionally healthy person would not have had the same response to the initial exposure. As to his conclusions regarding the etiology of appellant's condition(s), Dr. Phifer indicated in his report that recent research had found that patients with chronic solvent exposure have a unique diagnostic profile. Appellant's reports of headache, fatigue, memory difficulty and night sweats were consistent with a neurotoxic exposure, particularly in the initial phase. Dr. Phifer testified that fatigue, sleep disturbance and headache are consistent with chronic solvent exposure. Dr. Phifer indicated in his report and in his deposition that because the extent of appellant's exposure was unclear, it was difficult to extract out how much of appellant's emotional reaction is purely physiological due to brain changes and how much is purely dependant on anxiety.
The essential determination we must make is whether or not, in the context of summary judgment, appellant showed he was within the zone of danger, specifically, whether or not there was a "physical impact." First, appellant contends the trial court put too much emphasis on the fact that prior to appellee's motion for summary judgment, appellant withdrew any claim he had for bodily injury damages. We agree. In its decision granting appellee's motion for summary judgment, the trial court stated:
 [P]laintiff's contact with Safety-Kleen does not rise to the level of "physical impact" as required under Gottshall for a claim of negligent infliction of emotional distress. Plaintiff's alleged emotional-distress did not arise out of physical injuries arising from his exposure to Safety-Kleen or other chemicals while he was employed by defendant. Indeed, the parties' stipulation stated that "[a]ll claims asserting that Plaintiff sustained actual physical injury as a result of exposure to Safety-Kleen or other chemicals during the course of his employment at Norfolk Western Railway Company are hereby withdrawn." Thus, plaintiff's allegations that he suffered a "significant burn on his skin" and other symptoms shortly after the accident are insufficient to place plaintiff within the "zone of danger" arising from his exposure to Safety-Kleen. (Trial court decision at 5.)
The fact that appellant withdrew his bodily injury claims does not mean that in his claim for negligent infliction of emotional distress, appellant may not present evidence of physical injury. All of the facts surrounding appellant's alleged emotional injuries, including any physical contact with Safety-Kleen or other chemicals, may be relevant to appellant's remaining claim for negligent infliction of emotional distress. Certainly, such evidence is relevant to an analysis under the zone of danger test.
As to such test, appellee contends appellant's exposure to Safety-Kleen did not threaten or cause immediate, traumatic harm and constituted mere exposure as in the Buckley case. Appellee further states that the evidence shows appellant's fear of physical harm was unreasonable — that an emotionally healthy individual would not have had the same response to the initial exposure as appellant had. Applying the zone of danger test as set forth in Gottshall and Buckley, we conclude that for purposes of summary judgment, appellant showed he was within the zone of danger and, therefore, summary judgment was inappropriate.
The physical contact in the case at bar was not a mere exposure as in Buckley. In Buckley, the plaintiff was exposed to asbestos but showed no signs of disease or other physical symptoms. Here, appellant's contact with Safety-Kleen caused immediate, traumatic injury. The word "traumatic" is defined as an injury to living tissue caused by an extrinsic agent. See Webster's Ninth New Collegiate Dictionary at 1256. Safety-Kleen splashed onto appellant, causing immediate burning on his skin. A shower did not ease the burning, and appellant's skin was discolored on the site of the spill. The day after the spill, appellant saw his doctor because he was not feeling well (although appellant could not recall whether he told his doctor about the incident occurring the previous day).
The zone of danger test allows plaintiffs who sustain a physical impact or who are placed in immediate risk of physical harm to recover. The "physical impact" here was not a mere contact with a substance that might cause a disease at a later time and that threatened no harm other than such disease-related risk. While there was evidence that appellant feared such contact/exposure may cause future problems and/or disease, the evidence also shows that immediately following the injury, appellant sustained physical injury. Thus, this case is distinguishable from Buckley, and appellant showed he was within the zone of danger.
There is no doubt from the evidence presented that appellant suffered emotional injury. However, appellee focuses on the reasonableness of appellant's reaction to the incident. While there is certainly evidence that appellant's reaction was not the reaction of an emotionally healthy person, there is no evidence that appellant should have had no emotional reaction to the event(s). Indeed, within one month of the Safety-Kleen incident, Dr. Mullins diagnosed appellant as having chemical hepatitis as a result of the incident. The fact that other doctors later disagreed with such diagnosis does not necessarily take away from any emotional injury suffered by appellant both as a result of the incident itself and the diagnoses that did link his injuries to the incident. In addition, Dr. Phifer stated it was difficult to discern between how much of appellant's reaction was due to brain changes as a result of the chemical exposure and how much was purely dependant upon anxiety. Dr. Phifer also testified that in the initial period, appellant absorbed a sufficient amount of material to result in distorted brain function.
The evidence shows that appellant reasonably suffered some emotional distress as a result of the incident. It is the trier of fact's responsibility to decide the measure of damages for such injury in light of any evidence that part of appellant's emotional reaction may have been unreasonable. Indeed, inMarchica v. Long Island R. Co. (1994), 31 F.3d 1197, 1207, certiorari denied (1995), 513 U.S. 1079, 115 S.Ct. 727, the second circuit court of appeals stated that the right of the jury to decide the issue of causation in FELA cases must be most liberally viewed. In the context of determining whether the plaintiff's fear had a rational basis, the circuit court of appeals stated that in FELA cases, the traditional concept of proximate cause is supplanted by the less stringent standard that there be some causal relation, no matter how slight, between the injury and the railroad's breach of duty. Id., 31 F.3d at 1207. Here, there is evidence of such a causal relation and, therefore, a jury question exists as to whether appellee's negligence played a part in bringing about appellant's emotional injuries.
Finally, the policy reasons behind denying recovery for emotional harm are not threatened by the result in the case at bar. In the context of narrowing the definition of "physical impact," the Supreme Court in Buckley discussed the reasons why common law courts have restricted recovery for emotional injury.Buckley, 117 S.Ct. at 2118-2120. Such policy reasons include the difficulty for judges and juries to separate valid, important claims from invalid and trivial claims and the threat of unlimited and unpredictable liability. As to the validity of appellant's claim, the evidence shows appellant suffered genuine emotional distress. In Buckley, the Supreme Court pointed out that there was virtually no evidence of distress. Id. at 2119. Here, a trier of fact will not have to test the genuineness of appellant's emotional distress because there is uncontroverted evidence from an expert that appellant suffered emotional injury. Again, causation may be an issue, but this is for the jury to decide. For these same reasons, our decision herein will not cause employers to face the threat of unlimited and unpredictable liability. Again, the evidence shows that appellant's emotional distress was genuine, and the trier of fact will decide how much, if any, of the distress was caused by appellee's negligence.
In summary, appellant raised a genuine issue of material fact as to whether or not he was within the zone of danger. Therefore, summary judgment in favor of appellee was inappropriate. Accordingly, appellant's sole assignment of error is sustained.
Having sustained appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby reversed, and this cause is remanded to such court for further appropriate proceedings.
Judgment reversed and cause remanded.
PETREE and BOWMAN, JJ., concur.
 DETERMINATIONS OF COURT RELEASED THURSDAY, SEPTEMBER 2, 1999. OPINIONS AND DECISIONS