## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-CA-00755-SCT

*WILLIAM CLAYTON PATRIDGE*

*v.*

*BOARD OF TRUSTEES OF GREENWOOD*
*LEFLORE HOSPITAL: HOWARD M. EVANS, KATIE*
*LACKEY, REV. HAROLD LEWIS, JAMES L.*
*MITCHELL, AND FRED PRATER, GREENWOOD*
*LEFLORE HOSPITAL, A COMMUNITY HOSPITAL,*
*AND NURSES A AND B*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/95 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LEE B. HAZLEWOOD |
| ATTORNEYS FOR APPELLEES: | LONNIE D. BAILEY |
| | TOMMIE G. WILLIAMS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 1/22/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/24/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

William Clayton Patridge had surgery for prostate cancer on April 27, 1989, and returned to the Greenwood LeFlore Hospital (the Hospital) for yearly check-ups. On March 31, 1992, Patridge was stuck with a blood-stained IV cathelon needle in the lower buttocks, upper leg area. Patridge stated that he sat on the examination table in the proctology examination room. The needle was located under the paper covering the examination table in a crease of the table. After pulling out the needle, Patridge gave the needle to Nurse Davis and told her of the incident. Nurse Davis called for her assistant, Nurse Hodo. Both nurses checked Patridge's leg for a needle puncture wound and found none. The needle was discarded and never checked for communicable diseases such as HIV and

hepatitis. Patridge stated that the needle had dried blood stains on it.

The Hospital offered Suzanne Johnston's affidavit as evidence that Patridge has not been exposed to HIV or hepatitis and is not in danger of contracting the diseases due to the 1992 needle incident. Ms. Johnston serves as Assistant Director of Nursing for the facility. She stated that the rate of infection in a person actually exposed to HIV blood through needle stick injuries is .4% to .5%. If someone is actually exposed to HIV infected blood through a needle stick injury, there is a 1 in 200 chance of contracting HIV. Under the same circumstances, the chances of contracting HBV (Hepatitis B) is approximately 30%. The Hospital vaccinated Patridge for Hepatitis B and tested him for HIV and Hepatitis B. Both test results were negative. The tests for HIV and Hepatitis B were repeated three later times, at three months, seven months, and fifteen months with negative results. An additional test for HIV at eleven months also produced a negative result. Based upon these test results, Ms. Johnston concluded, "To a reasonable degree of scientific certainty Mr. Patridge's chance of now contracting Hepatitis or HIV from the incident as Mr. Patridge alleges it to have occurred in his complaint are now zero." The last of these blood tests occurred in February of 1994.

Patridge argues that although he may not have HIV, he does not believe that anybody can assure him of that fact. Patridge also alleges that the needle prick caused a burning sensation and a red spot on his leg.

In response to the Hospital's motion for summary judgment, Patridge offered the affidavit of Linda L. Pifer, Ph.D. Dr. Pifer is a professor in the Department of Clinical Laboratory Sciences at the University of Tennessee, Memphis, The Health Center. Among others things, Dr. Pifer is a Registered Specialist in Public Health and Medical Laboratory Microbiology. She grows HIV in her laboratory where she has been involved with AIDS research for thirteen years. In her affidavit, Dr. Pifer states the following:

> 3. AIDS testing is not susceptible of the same degree of certitude as in testing for other infectious agents for numerous reasons, including but not limited to the following:
>
> a) On average, seroconversion ( production of specific antibodies to the AIDS virus) occurs from six to twelve weeks after exposure, but can be delayed in some instances for a number of years following exposure.
>
> b) Scientific studies have revealed that HIV remains biologically active and culturable for up to fifteen days at room temperature in a liquid medium, and that it can remain active in a dried state for an as yet undetermined length of time.
>
> c) An individual might test negative for HIV and yet be capable of transmitting and, in fact, actually transmit AIDS to another person.
>
> d) Although transmission of HIV infection through needle stick exposure is relatively uncommon, most high-risk exposures to HIV-infected blood result in HIV inoculation. Although seroconversion does not occur in these cases, HIV-specific T-helper cell activity may be demonstrated, thus illustrating that documented exposure to HIV does not necessarily result in seroconversion. At present, it is not known if individuals exposed under such circumstances will eventually seroconvert and/or develop clinical AIDS.

e) Body fluids, substances and specimens can transmit HIV, following which the virus may lose its ability to infect and become incapable at some as yet to be defined time of transmitting HIV.

4. All discarded needles and sharps are presumed to be infectious with regard to HIV and other blood and body fluid transmissible agents. Discarded needles must be presumed to be and are in fact capable of transmitting the AIDS virus.

5. An exposure to HIV via a needle stick is regarded an "exposure" whether HIV or other blood-born pathogen is ever documented as being present or ever having been present in, on or associated with the needle. Regardless of the availability of documentation, the unique seriousness of the incident dictates that it must be perceived and dealt with as though it were a documented exposure to HIV or other bloodborne pathogens.

6. Due to the universal lethality of HIV and its elusive qualities, this virus/group of viruses is viewed by health care professionals as unique relative to other disease-causing agents due to its lengthy and variable incubation time, the inevitable mortality to the host, and the fact that very much is not yet known about HIV. In view of these statements, it is medically presumed that all needles exposed to blood/tissue/human specimens are contaminated with the AIDS virus and are capable of transmitting the virus(s) to another person.

Patridge also included the affidavits of L.C. Henson, M.D., and Michael Whelan, Ph.D., in his response to the Hospital's motion for summary judgment. Dr. Henson stated that Patridge is having trouble sleeping and has diarrhea due to his anxiety of contracting AIDS. Dr. Whelan is a psychologist who has evaluated Patridge. He determined that Patridge suffers from psychological and mental distress as a result of the needle stick incident and that the effects of the disorder are serious. Patridge is bothered by the fear of contaminating others, particularly his family, and by his fear of contracting HIV. Dr. Whelan determined that Patridge has developed an obsessive compulsive disorder which is evident by various behavioral manifestations. These manifestations include fear of contaminating others leading to not visiting other people's homes, avoiding hugging and kissing his grandchildren, creating a separate bathroom from that of his immediate family, ritualistic hand washing with clorox, and using extra cleaning solvents in an attempt to "purify" his towels at home. Furthermore, Patridge has developed depression evidenced by an inability to sleep, anger, and chronic fatigue.

## LEGAL ISSUES

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). *See also* **Brown v. Credit Center, Inc.**, 444 So.2d 358, 362 (Miss. 1983). The moving party bears the burden of showing that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. **Palmer v. Biloxi Regional Medical Center, Inc.**, 564 So.2d 1346, 1355 (Miss. 1990). "All evidentiary matters before the Court must be considered in the light most favorable to the non-moving party." **Drummond v. Buckley**, 627 So.2d 264, 267 (Miss. 1993) (*citing* **McFadden v. State**, 580 So.2d 1210, 1214 (Miss. 1991); **Webster v. Mississippi Publishers**

*Corp.*, 571 So.2d 946, 949 (Miss. 1990); ***Brown***, 444 So.2d at 362.

## I.

## WHETHER THE LOWER COURT ERRED IN REQUIRING A SHOWING OF ACTUAL EXPOSURE TO HIV IN A CLAIM FOR NEGLIGENT EMOTIONAL DISTRESS IN A FEAR OF AIDS CASE?

Judge Bogen determined that this case falls within the category of fear of AIDS cases in which "there was a channel of exposure to the plaintiff but no proof that HIV was present." ***Vallery v. Southern Baptist Hospital***, 630 So.2d 861 (La. Ct. App. 1993). Based upon decisions in other jurisdictions addressing fear of AIDS claims, Judge Bogen determined that a plaintiff must show exposure to HIV. Assuming that Patridge was exposed to HIV, Judge Bogen would require Patridge to show some likelihood that he will acquire the HIV virus or develop AIDS. Judge Bogen wrote, "There is a significant difference between emotional distress arising from facts which reasonably induce one to develop fear of contracting a disease and an irrational fear unsupported by any scientific facts."

We must look no further than the recent case of ***Leaf River Forest Products, Inc. v. Ferguson***, 662 So.2d 648 (Miss. 1995). In ***Ferguson***, the plaintiffs sued a paper mill alleging that the mill discharged harmful substances (dioxin) into the Leaf and Pascagoula Rivers, thereby causing the plaintiffs personal injury and property damage. ***Ferguson***, 662 So.2d at 650. We determined that the evidence was insufficient to support a jury verdict based on emotional distress. ***Id***. at 650.

Mississippi "recognizes recovery for both negligently and intentionally inflicted emotional distress." ***Ferguson***, 662 So.2d at 658. "However, this Court has never allowed or affirmed a claim of emotional distress based on a fear of contracting a disease or illness in the future, however reasonable." ***Id.*** To recover for emotional distress predicated on fear of future illness, a plaintiff must provide "substantial proof of exposure and medical evidence that would indicate possible future illness." ***Id.*** This Court found that the Fergusons' claim was premature, but that if any disease caused by alleged dioxin exposure manifested itself in the future, the Fergusons could pursue a cause of action. ***Id.***

Here, Patridge fails to show that he was exposed to HIV or that he manifests a disease resulting from the exposure. However, Patridge contends that he is unable to prove that he was exposed to HIV because the Hospital threw away the needle, thereby preventing a determination of whether the needle was infected with HIV. Patridge further contends that since he is the non-moving party in the summary action, all evidentiary matters should be found in his favor. However, even if he could prove that the needle was HIV infected, and that he was directly exposed to the needle, Patridge failed to present evidence of the second element of a claim for emotional distress predicated on fear of a future illness or disease. Namely, Patridge failed to provide any evidence of disease manifestation caused by direct exposure to the needle. In a fear of AIDS case, the plaintiff must prove that he has been infected with HIV. Patridge has failed to prove that he has been infected by HIV. To the contrary, the Hospital has shown that Patridge has tested negative for HIV more than fifteen months after the alleged exposure. Judge Bogen properly granted the Hospital's motion for summary judgment on the issue of fear of future disease in this case.

## II.

**WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON ITS DETERMINATION THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER APPELLANT SUFFERED A COMPENSABLE INJURY?**

Patridge alleges that even if he is precluded from a negligent emotional distress claim, he is entitled to compensable damages from the needle puncture wound. He asserts that the needle punctured his buttock causing a burning sensation, a knot, and a red spot. Patridge further alleges that the needle puncture has caused insomnia, anxiety, nervousness, and diarrhea. Patridge concludes that since he suffered a personal injury which caused pain and suffering, the trial court erred in granting the Hospital's motion for summary judgment on this matter.

The lower court's order denying Patridge's motion for reconsideration stated that Patridge's claim for pain and suffering as a result of the needle prick was an insignificant element of the fear of AIDS claim. Judge Bogen denied Patridge's claim based on the ancient maxim, *lex non curat de minimus -* the law does not deal with trifling matters.

Each party contends that the other has admitted defeat on this point. Patridge maintains that the Hospital's attorney admitted that the lower court should not have granted summary judgment on this issue during oral argument:

> Mr. Hazlewood has identified a point that is interesting. It may be the best we can do here is partial summary judgment. If you accept the plaintiff's version of the facts as true, then I guess it is perhaps true that he would have the right to sue us for the physical injury of having needle prick in his leg with whatever pain and suffering or pain that that entailed.

However, Patridge takes this quotation out of context. Counsel for the Hospital proceeded to argue that Patridge, in his deposition, admitted that the needle stick did not cause any physical injury, thereby eliminating his cause of action for pain and suffering.

The Hospital contends that Patridge admitted in sworn testimony that the needle puncture did not cause compensable injury. They suggest that Patridge's answers to interrogatories failed to state any expenses incurred as a result of the needle prick, and failed to mention the needle prick when responding to interrogatories to identify all health care providers and the condition for treatment. When asked during his deposition whether any medical doctor treated him for any problem related to sitting on the needle, Patridge responded "none." Patridge stated that he has not suffered any physical injury from the needle prick:

> Q: You haven't had any physical injury as a result of this incident. It's all been psychological or mental?
>
> A: Right. It's something that just--
>
> Q: You agree with that statement?
>
> A: I agree with you 100 percent because that's something I just can't get off my mind.

Counsel for Patridge objected, stating that a clarification to "physical injury" was needed. The clarification was not made.

Based upon the record before this Court, we cannot say that no genuine issue of fact exists on the issue of damages resulting from the needle prick. The evidence shows that the Hospital negligently left a needle lying on an examination table which pricked Patridge. He has asserted damages in the form of pain and suffering, and should be allowed to present his evidence to a jury. "[T]he amount of damages awarded is primarily a question for the jury." *Wallace v. Thornton*, 672 So.2d 724, 729 (Miss. 1996) (*quoting Rodgers v. Pascagoula Public School District*, 611 So.2d 942, 945 (Miss. 1992)). Whether he can prove his claim for damages is a question for the jury. *Webb v. Jackson*, 583 So.2d 946, 950 (Miss. 1991). Even where there are no apparent damages, the jury must decide what damages, if any, were suffered by the plaintiff as a result of the defendant's negligence. *Bostic v. Mitchell*, 363 So.2d 1356, 1358 (Miss. 1978).

## CONCLUSION

According to Mississippi law on negligent emotional distress predicated on fear of contracting a future disease, a plaintiff must show that he was exposed to the disease and that the body manifests future development of a disease caused by the exposure. Even presuming that the needle which punctured Patridge's buttock was infected with HIV, Patridge has failed to prove that his body manifests a future development of AIDS. We therefore affirm the lower court's decision to grant the Hospital summary judgment on the issue of fear of future disease. However, we reverse the award of summary judgment on Patridge's claim regarding any physical injury resulting from the needle prick. We remand this case for a trial on the issue of any such provable damages.

**AFFIRMED IN PART. REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., AND ROBERTS, J., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J., AND McRAE, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J. MILLS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. WALLER, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

I dissent. In my view, summary judgment was unwarranted in this case because the least the plaintiff has demonstrated is that he was negligently damaged by a prick of a needle and that, at the time, there was a medically reasonable possibility of contracting a devastating and fatal illness from the prick. While it may possibly be shown at a point in time after reasonable testing that the medical evidence then existing would indicate that continued fear was not reasonable as based upon a medical possibility, the fact that damages would have already been suffered cannot be gainsayed. Recovery of those damages should not be precluded by summary judgment.

Nothing in *Ferguson* suggests otherwise. *Ferguson* involved possible exposure to an agent of disease. Here, we have known exposure to an agent of disease and in a manner well known as a source of the disease in question. Patridge had to be vaccinated against one disease and tested over a

period of fifteen months for that disease, as well as Hepatitis B, and HIV. That alone suggests that there was medical evidence of the possibility of future disease. I do not read *Ferguson* to say that, in these circumstances, one must prove the blood to which one was exposed by introduction into one's body was HIV positive. That might prove an impossible task. In fact, there is nothing in this record to suggest that it was possible to determine whether the blood to which he was exposed was HIV positive.

On this record, I would reverse the grant of summary judgment and remand this matter for trial. I would not limit the issue on remand to physical injury however. I would allow damages for emotional distress for the period in which the evidence shows there was a medical possibility that the disease was contracted.

**PITTMAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

I concur with the majority's decision to reverse the award of summary judgment on Patridge's claim regarding physical injury arising from the needle prick. I dissent, however, to the finding that summary judgment was appropriate regarding Patridge's claim for fear of future disease. On this issue, I would also reverse and remand.

Patridge asks this court to allow him to recover for emotional distress based on fear of AIDS. Any plaintiff who fears that he has contracted HIV, and fears that he may develop AIDS in the future, because of a defendant's negligence should recover damages for the time in which he had a reasonable fear of a substantial, medically verifiable possibility of contracting HIV. The reasonable, compensable fear is justified in this case because Patridge's fear was realized at the instant he was stuck with the IV needle. Whether Patridge actually was infected with HIV is irrelevant. He was stuck with a used needle that could have carried HIV, and his fear arose from his injury. Unfortunately, even after realizing that Patridge had been stuck with the needle, the hospital discarded the needle which could have been tested for the presence of HIV. Any negative presumption should rest with the hospital in this case.

For recovery, there must be some reasonable connection between the act or omission of a defendant and the damages which a plaintiff has suffered. Here there was factual evidence of a causal connection between the alleged breach of duty and the purported damages. Recovery of damages for negligent infliction of emotional distress is permissible where nature of fright or mental suffering naturally follows from physical injury.

In this way, the instant case is much different from *Leaf River v. Ferguson*. In that case, there was doubt regarding the causal connection between the breach by Leaf River and the purported damages to the Fergusons. Specifically, there was no proof of any act that could have reasonably led to the fear contemplated by Fergusons, because the contaminants found in the river were over eighty miles from the Fergusons' property. Therefore, the basis for the Fergusons' fear was not realized in the same way that Patridge's fear was realized.

Patridge reasonably feared a possibility of contracting AIDS once he sat on the needle. He testified

that when he was stuck, the needle had blood stains on it. Before tests can determine with reasonable certainty whether an individual is HIV-positive, if that individual knows that his bodily fluids may have come in contact with those of an HIV-positive person, or if he believes that he has been exposed to an agent that possibly carries HIV (like a negligently placed, previously used needle), he has reason to suffer severe emotional distress. An individual, after testing, may even reasonably fear that nurses or technicians did not perform the HIV test properly, that he or she falls in the small group of persons who only develop HIV antibodies after an unusually long period of time, or even that he or she is in the remote group for whom the tests never detect the presence of HIV. Patridge was tested for HIV immediately after the incident, and again at three months, seven months, eleven months, and fifteen months, each time receiving negative results. These tests do not remove all doubt, and Patridge may remain reasonably apprehensive that he might, at some time in the future, test HIV-positive and develop AIDS due to his exposure to the needle. Nonetheless, at the very least, prior to the HIV tests showing that he had not contracted HIV, Patridge had genuine reason to fear exposure to HIV and subsequent onset of AIDS.

> It cannot validly be said, as a matter of law, in the light of common knowledge, that a person who receives a puncture wound from medical waste reacts unreasonably in suffering serious psychic injury from contemplating the possibility of developing AIDS, even if only for some period of time, until it is no longer reasonable, following a series of negative tests, to apprehend that result. Indeed, one need not have actually acquired the HIV virus to be so affected by such a fear for a period, especially since some time must pass before an accurate test can be administered.

*Williamson v. Waldman*, 677 A.2d 1179, 1181 (N.J. Super. Ct. App. Div. 1996), *aff'd as modified*, 696 A.2d 14 (N.J. 1997). The plaintiff in *Williamson* punctured herself on a sharp instrument improperly left in the trash. She did not know whether the instrument had been in contact with an HIV-positive person, but she feared that she contracted HIV. The New Jersey Appellate Division held:

> [AIDS] is a disease universally dreaded by the lay public. Under those circumstances, it cannot be concluded as a matter of law that the plaintiff reacted unreasonably or unforeseeably. Fearing that she faced serious injury as a result of exposure to HIV, it was not unreasonable that she would be greatly upset during the period of time that was necessary to obtain medical assurance that she was not infected. It may very well be that there is some period of time after receiving a puncture wound from medical waste during which any person would experience a range of mental reactions, from mere anxiety to actionable emotional distress, and ought to be eligible for compensation therefor if she meets the required tests, . . .

*Williamson*, 677 A.2d at 1181.

The majority concludes that Mississippi should limit recovery by requiring threshold proof of "actual exposure," which would compel claimants to prove that HIV was present in the disease-transmitting agent, whether it was a previously used needle or bodily fluids. While it may be true that a fear of AIDS from exposure to a substance that may or may not have contained HIV is irrational after confirming the absence of HIV infection, this writer cannot say, as a matter of law, that at the time a person is negligently exposed to a potentially HIV-laden needle, a fear of contracting AIDS is

irrational.

Patridge should not be precluded by summary judgment from proving that the hospital is liable for negligent infliction of emotional distress. We did away with the requirement for physical impact in emotional distress cases in *First Nat'l Bank v. Langley*, 314 So. 2d 324, 338-39 (Miss. 1975). Since there was physical impact in this case, there is no reason for this Court to preclude recovery. At the very least, Patridge suffered damages for a medically reasonable fear of contracting AIDS from being stuck by the needle. The question of negligence should be allowed to go to a jury. *See Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1200 (2d Cir.1994), *cert. denied* 513 U.S. 1079 (1995) (in FELA claim, allowing jury to determine whether there was a rational basis for mental anguish claim because the plaintiff could not determine who had used the discarded needle and whether he had been exposed to HIV); *Howard v. Alexandria Hosp.*, 429 S.E.2d 22, 24-25 (Va. 1993) (allowing patient to recover damages for fear of AIDS when plaintiff was operated on with unsterilized instruments, despite lack of evidence that instruments had been used on HIV-infected person); *Faya v. Almaraz*, 620 A.2d 327 (Md. 1993)(adopting a foreseeable-risk standard and holding that two patients operated on by an HIV-positive doctor could recover emotional-distress damages, even though they could not prove actual exposure to, or a means of transmission of, the HIV virus). Given the finality associated with contracting HIV and developing AIDS, it would seem more prudent to allow a plaintiff to recover for emotional distress based on the fear of AIDS without demonstrating actual exposure to HIV.

As the majority chooses to affirm the summary judgment awarded to the hospital for the fear of AIDS claim, I respectfully dissent.

**BANKS, J., JOINS THIS OPINION.**

### MILLS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:


I agree that the plaintiff should not be able to recover for fear of exposure to the HIV virus until it is shown that he has actually contracted the disease. However, I also agree with the trial judge that Patridge's claim falls under the ancient maxim of *lex non curat de minimus*. Every injury under the sun does not deserve a legal remedy.

The majority opinion extends actionable rights to the realm of silliness. Patridge stated that he suffered no physical injury from the needle prick. Defense counsel surely believes that he suffered no recoverable physical injury. And, the trial judge agreed with them both. Where is the reversible error? I see none.

It is easier to make this harm legally actionable than to make it legitimate. We, as all courts of law, should strive for legitimacy via legality. Unfortunately, the majority accomplishes only the latter.

Accordingly, I dissent from the view that Patridge presented a claim worthy of legal redress.

**SMITH, J., JOINS THIS OPINION.**