617 A.2d 1302

John ALTIERE, Appellee

v.

FIBREBOARD CORPORATION, PACOR, Inc., Southern Textile Corp., J.P. Stevens Co., Eagle Picher Industries, Garlock, Inc., UNARCO Industries, Inc., Keene Corp., Owens–Illinois Glass, GAF Corp., Raybestos–Manhattan, Celotex Corp., Johns–Manville Corp.

Appeal of FIBREBOARD CORPORATION.

Superior Court of Pennsylvania.

Argued May 1, 1992.

Filed Dec. 16, 1992.

R.T. Wentley, Pittsburgh, for appellant.

Steven J. Cooperstein, Philadelphia, for Altiere, appellee.

Before ROWLEY, President Judge, and WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, KELLY and JOHNSON, JJ.

OPINION PER CURIAM:

John Altiere, in a "reverse bifurcated" trial, was awarded damages in the amount of three hundred fifty thousand ($350,-000) dollars for pleural thickening, pulmonary asbestosis, with consequent exertional dyspnea (shortness of breath), and the risk of future asbestos related diseases, including cancer, against various manufacturers of asbestos products. Although the claim was thereafter settled by most manufacturer defendants, Fibreboard Corporation proceeded to trial on the issue of liability. The jury thereafter found that Fibreboard and twelve (12) other non-bankrupt defendants had contributed to Altiere's asbestos related injuries. Post-trial motions were denied, and judgment was entered in favor of Altiere and against Fibreboard in the amount of $43,265.00. Fibreboard appealed.

The Altiere case was tried jointly with a claim which had been made by Elmer Ottavio, and this Court, in the Ottavio case,[1] has already reviewed a contention by Fibreboard as to the alleged insufficiency of the evidence to support the jury's finding that Fibreboard's asbestos products were a substantial factor in causing asbestos related injury to Altiere and Ottavio. This Court has also reviewed and found to be without merit claims that the trial court erred by (1) allowing the trial to be completed before a jury of less than eight (8) jurors, and (2) refusing to allow liability to be apportioned among defendant manufacturers who were in bankruptcy and did not participate in the trial.

1. See: *Ottavio v. Fibreboard Corp., et al.,* 421 Pa.Super. 284, 617 A.2d 1296 (1992).

Altiere's claim was for a disease which was no longer asymptomatic. On the contrary, he was already experiencing pulmonary asbestosis and consequent shortness of breath. Altiere, however, was a heavy smoker. Therefore, Fibreboard defended the Altiere claim on grounds that any damages for the fear and/or risk of future cancer could be and should be apportioned between his smoking habit and his job-related exposure to asbestos.[2] The trial court refused to permit the jury to make such an apportionment. Fibreboard argues on appeal that this was error. It contends that with respect to the fear of future cancer and the risk of future cancer, the evidence was sufficient to allow the jury to make an apportionment between appellant's smoking of cigarettes and his exposure to asbestos.

Preliminarily, it has been suggested that our recent adoption of the separate disease rule for asbestos actions in *Marinari v. Asbestos Corp., Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), has changed the basis of recovery in asbestos cases. Claims for the "risk of future cancer" or "fear of cancer" would no longer form the basis of recovery in asbestos cases where cancer was not present. It has also been suggested, on the basis of *Marinari,* that any discussion of apportionment is unnecessary. It may well be.

However, these suggestions do not change the past. Here, Fibreboard defended against such charges by raising an appropriate apportionment defense, just as they were entitled to do at the time of trial, in February, 1990. On appeal, Fibreboard charges that (1) the statistical evidence given by Dr. Auerbach was sufficient to warrant an apportionment instruction, and, (2) the trial court's error in refusing such apportionment instruction could have significantly affected the size of the verdict. Fibreboard is entitled to a review of these issues on the merits notwithstanding that asbestos litigation in this Commonwealth may follow a different course now that the two disease rule in *Marinari* has been adopted.

2. Fibreboard has not argued on appeal that it was error for the trial court to refuse to instruct the jury that Altiere had a right to bring a second action if he developed future asbestos related injury; and, therefore, that issue is not before this Court in this appeal.

We now turn to the issue raised in this appeal. Section 433A of the Restatement (Second) of Torts provides:

### § 433A. Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

In *Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 528 A.2d 947 (1987), the Supreme Court of Pennsylvania adopted § 433A of the Restatement and held that a trial court had erred when it permitted a jury to apportion damages without evidence to establish a reasonable basis on which to make an apportionment between asbestosis and emphysema. The *Martin* court reasoned:

The jury, although presented with a great deal of testimony concerning appellant's history and physical condition, was provided no guidance in determining the relative contributions of asbestos exposure and cigarette smoking to appellant's disability. In fact, two experts testified that such a determination was not possible. A situation analagous [sic] to the instant case arose in *Offensend v. Atlantic Refining Co., supra* [322 Pa. 399, 185 A. 745 (1936) ]. There, a jury award of damages for aggravation of an existing tubercular condition was modified (reduced), because the expert testimony did not address the duration of the aggravation. "If the doctors were not in a position to make an estimate of the extent of the aggravation in point of time, the jury should not have been allowed to hazard a guess beyond the period shown with reasonable certainty." *Id.*, 322 Pa. at 404, 185 A. 745. Here, as in *Offensend*, the jury cannot be expected to draw conclusions which medical experts, relying on the same evidence, could not draw. The causes of disability in this case do not lend themselves to separation by lay-persons on any reasonable basis. Thus, common sense and common experience possessed by a jury do not

serve as substitutes for expert guidance, and it follows that any apportionment by the jury in this case was a result of speculation and conjecture and hence, improper. "Rough approximation" is no substitute for justice.

*Id.* at 515 Pa. 384–385, 528 A.2d at 950 (footnotes omitted). See also: *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 591, 574 A.2d 1084, 1097 (1990).

In the present case, when Altiere's expert, Dr. Donald Auerbach, was asked about the increased risk of lung cancer following occupational exposure to asbestos, Dr. Auerbach responded by postulating a baseline risk in the population. Dr. Auerbach then proceeded from this hypothetical baseline to establish various multiples of this same hypothetical baseline as the risk factors, submitting that: (1) in a group of people exposed to neither cigarette smoke nor asbestos, the incidence of cancer each year would be eleven (11) persons in a population of 100,000; (2) in a group exposed to cigarette smoke and not asbestos the incidence of cancer each year would be 120 persons in a population of 100,000; (3) in a group exposed to asbestos and not cigarette smoke the incidence of cancer each year would be 55 persons in a group of 100,000; and finally, (4) in a group exposed to both asbestos and cigarette smoke, as was Altiere, the incidence of cancer each year would be 600 persons in a population of 100,000. N.T., 2/13/90 at 20–22.

We are not persuaded that this testimony sufficed to allow the jury to consider the apportionment of damages for a fear and/or likelihood of a future asbestos related cancer, since we are reluctant to conclude, without more, that this constitutes reliable statistical evidence which would support a Section 433A "apportionment of harm" charge to the jury.

Furthermore, we must observe, as did the trial court, that Fibreboard made no attempt to offer its own apportionment testimony, but instead relied upon Dr. Auerbach, the appellees' witness to do the job for them. The trial court noted that "[s]ince Dr. Auerbach did not apportion causation" himself, his evidence was insufficient to support an apportionment charge. Trial Court Opinion, dated October 31, 1991, at 8.

The jury cannot be permitted to draw conclusions which medical experts could not draw if they relied upon the same evidence.

Concluding that the present record provides no basis upon which to instruct the jury that damages could be apportioned for the fear and/or risk of cancer between Altiere's employment-related asbestos exposure and cigarette smoking, we find the trial court to have properly refused to give the jury the apportionment instruction requested by Fibreboard. Finding no other error, the judgment must be, as it is,

Affirmed.

KELLY, J., files a concurring statement.

WIEAND, DEL SOLE and TAMILIA, JJ., file a dissenting opinions.

KELLY, Judge, concurring:

Although I join the majority's opinion in its entirety, I write separately to further analyze the issue of whether it is possible to apportion the harm arising from the combined effect of asbestos exposure and cigarette smoking.

After reviewing the relevant medical literature, I believe that the medical community is unable to provide a reasonable basis upon which a jury can determine how to apportion damages when a plaintiff has been exposed to both asbestos and cigarette smoke. My review of this literature reveals that the medical community agrees that the impact of both carcinogens on the human body is synergistic. Philip J. Landrigan, *The Recognition and Control of Occupational Disease,* 266 JAMA 676–80 (1991); *A Physician's Guide to Asbestos–Related Diseases,* 252 JAMA 2593–97 (1984) [hereinafter *Physician's Guide* ]; Arnold E. Reif, *Synergism in Carcinogenesis,* 73 J. Nat'l Cancer Inst. 25–39 (1984) [hereinafter *Synergism* ]. That is, the risk of harm from exposure to both carcinogens is greater than the sum of the risk from exposure to the individual carcinogens. *Synergism.* What is unclear from the literature is how this synergism occurs. *See* J. Hobson, *Direct Enhancement by Cigarette Smoke of Asbestos Fiber Pen-*

*etration and Asbestos–Induced Epithelial Proliferation in Rat Tracheal Explants,* 80 J.Nat'l Cancer Inst. 518–21 (1988) (cigarette smoke increases asbestos fiber penetration which in turn appears to enhance the penetration and retention of carcinogens in the covering of the trachea); *Physician's Guide* (a carcinogen in its own right, asbestos appears to act as a cocarcinogen with cigarette smoke in the genesis of lung cancer). Thus, I believe that it is not yet possible to apportion damages in cases where there is a synergistic relationship between carcinogens.

Although this is the first time that this Court has been asked to determine whether the statistical evidence set forth in Part IV to the majority's opinion, provides a reasonable basis to apportion harm between a plaintiff's cigarette smoking and his exposure to asbestos, the United States Court of Appeals for the Third Circuit recently addressed this same issue in *Borman v. Raymark Industries, Inc.,* 960 F.2d 327 (3rd Cir.1992). In *Borman,* the Court of Appeals was asked to determine whether, under Pennsylvania law, the evidence was sufficient to require the trial court to charge the jury on apportionment of damages between asbestos exposure and tobacco consumption.

There, the plaintiff's expert testified that asbestos was a substantial contributing factors to both Mr. Borman's asbestosis and lung cancer. *Id.* at 330. Plaintiff's expert also testified that Mr. Borman's cigarette smoking was a substantial contributing factor to the development of his lung cancer. *Id.* In addition, the plaintiff's expert provided statistical data comparable to that provided here by Dr. Auerbach. *Id.* However, the expert was unable to assign a percentage of contribution to each cause. *Id.*

Despite the expert's inability to determine what percentage of the plaintiff's injury was due to asbestos and what percentage was due to cigarette smoking, the defendant argued that the evidence presented at trial, in particular the statistical evidence, provided a reasonable basis for apportioning damages. The court of appeals found that under Pennsylvania law, such evidence does not provide a reasonable basis for

apportionment because such "evidence speaks to the likelihood that either cigarette smoking, asbestos exposure or both will cause cancer, rather than to the apportionment of damages between two causes." *Borman, supra* at 335. This, I believe, is the proper interpretation of the aforementioned statistical data.

WIEAND, Judge, dissenting:

I respectfully dissent. John Altiere, the plaintiff, did not have cancer and did not claim damages for cancer. His claim, rather, was for the risk or fear of getting cancer in the future because of prior exposure to asbestos. His own medical expert, Dr. Donald Auerbach, testified to the statistical risk of cancer among persons who indulged in smoking and/or were exposed to asbestos dust. He said that: (1) in a group of people exposed to neither cigarette smoke nor asbestos, the incidence of cancer each year would be eleven (11) persons in a population of 100,000; (2) in a group exposed to cigarette smoke and not asbestos, the incidence of cancer each year would be 120 persons in a population of 100,000; (3) in a group exposed to asbestos and not cigarette smoke, the incidence of cancer each year would be 55 persons in a group of 100,000; and (4) in a group exposed to both asbestos and cigarette smoke, as was Altiere, the incidence of cancer each year was 600 persons in a population of 100,000. This evidence, in my judgment, was relevant to assist a jury in evaluating Altiere's claim for the risk of future cancer because of his prior exposure to asbestos. Not only was it relevant but, in my judgment, the evidence was sufficient to permit a jury to apportion damages for the "risk" of possible, future cancer between smoking and exposure to asbestos. To hold, in the face of such evidence, that either exposure to asbestos or cigarette smoking, without apportionment, was wholly responsible for Altiere's risk of future cancer flies in the teeth of both medical science and public knowledge.

Section 433A of the Restatement (Second) of Torts provides as follows:

## § 433A.  Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

In *Martin v. Owens–Corning Fiberglas Corp.,* 515 Pa. 377, 528 A.2d 947 (1987), the Supreme Court of Pennsylvania adopted § 433A of the Restatement and held that a trial court had erred when it permitted a jury to apportion damages without evidence to establish a reasonable basis on which to make an apportionment between asbestosis and emphysema.  The *Martin* court reasoned:

The jury, although presented with a great deal of testimony concerning appellant's history and physical condition, was provided no guidance in determining the relative contributions of asbestos exposure and cigarette smoking to appellant's disability.  In fact, two experts testified that such a determination was not possible.  A situation analagous [sic] to the instant case arose in *Offensend v. Atlantic Refining Co., supra* [322 Pa. 399, 185 A. 745 (1936) ].  There, a jury award of damages for aggravation of an existing tubercular condition was modified (reduced), because the expert testimony did not address the duration of the aggravation.  "If the doctors were not in a position to make an estimate of the extent of the aggravation in point of time, the jury should not have been allowed to hazard a guess beyond the period shown with reasonable certainty."  *Id.,* 322 Pa. at 404, 185 A. 745.  Here, as in *Offensend,* the jury cannot be expected to draw conclusions which medical experts, relying on the same evidence, could not draw.  The causes of disability in this case do not lend themselves to separation by lay-persons on any reasonable basis.  Thus, common sense and common experience possessed by a jury do not serve as substitutes for expert guidance, and it follows that any apportionment by the jury in this case was a result of

speculation and conjecture and hence, improper. "Rough approximation" is no substitute for justice.

*Id.* at 515 Pa. 384–385, 528 A.2d at 950 (footnotes omitted). See also: *Taylor v. Celotex Corp.*, 393 Pa.Super. 566, 591, 574 A.2d 1084, 1097 (1990).

In the instant case, however, the basis for making an apportionment between the causes for a risk of future cancer is persuasive. Altiere's claim that he fears a future incidence of cancer is, by its very nature, speculative. No one can predict with medical certainty whether he will be afflicted by cancer in the future. The best we can do is look to the statistical evidence. If we can rely upon this evidence— without it, there is only speculation—to assess the value of Altiere's claim that he may get cancer in the future, I am at a loss to understand why the same statistical evidence will not form a basis for apportioning responsibility for such risk between the asbestos to which Altiere has been exposed and the smoking of cigarettes in which he continues to indulge.

I would hold that it was error for the trial court in this case to refuse to allow the jury to apportion responsibility for the "risk" of future cancer between smoking and exposure to asbestos. Therefore, I dissent. I would reverse and remand for a new trial.

DEL SOLE, Judge, dissenting:

I cannot agree with the decision of this court affirming the judgement. At the time of trial, the defendant, Fibreboard, sought a jury instruction that would have limited recovery to those diseases that had been manifested. This request was denied by the trial court and was the reason for our reversal in the consolidated companion case of *Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296 (1992). Also, we previously determined in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) ... "that in an action for exposure to asbestos, a plaintiff's claim may encompass only the harm caused by the disease or diseases which have become manifest and that a later separate action may be

pursued if and when a separate disease occurs". Ottavio, *supra* at 296, 617 A.2d 1302.

To me, this means that claims for "risk of future cancer" and "fear of cancer" no longer form the basis of recovery in cases where cancer is not nor has not been present. By this analysis, there is no reason for a discussion and determination of the issue of apportionment. That issue is only valid if the plaintiff is entitled to recover for "fear" or "risk" of future cancer. Since the trial court charged the jury that those items could be considered in determining the plaintiff's damages, a new trial is necessary.

Contrary to the Majority's claim of waiver, I believe that the issue of recovery for "fear" or "risk" of cancer was properly preserved by requesting the "two disease charge." The trial court's refusal to so charge, required the appellant to defend on the question of apportionment. However, since we have determined that the trial court erred in refusing to so charge the jury, inherent in that finding must be a consideration of what damages would be recoverable if the charge had been given. To hold otherwise would be inconsistent and contravene the purposes which are the foundations for the adoption of the "two disease" position by this court.

TAMILIA, Judge, dissenting:

I respectfully dissent and would reverse and remand for a new trial on the basis of our recent holding in *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992).