623 A.2d 3

Robyn LUBOWITZ and Jordan Lubowitz, H/W, Appellants,

v.

ALBERT EINSTEIN MEDICAL CENTER, NORTHERN DIVISION and Dr. Martin Freedman.

Superior Court of Pennsylvania.

Argued Dec. 8, 1992.

Filed April 13, 1993.

Theodore M. Schaer, Philadelphia, for appellants.

Jill B. Clarke, Philadelphia, for appellees.

Before CAVANAUGH, BECK and POPOVICH, JJ.

BECK, Judge.

The issue is whether plaintiffs-appellants, Robyn and Jordan Lubowitz, stated a cause of action against defendants-appellees Albert Einstein Medical Center (the "Hospital") and Dr. Martin Freedman for "fear of AIDS." The trial court found they did not and granted appellees' motion for summary judgment. We affirm.

In August 1985, appellants participated in the Hospital's in vitro fertilization program. An egg was removed from Robyn Lubowitz and was placed with a sample of her husband's sperm into a placental serum provided by an anonymous donor.[1] The embryo was then implanted, and Robyn Lubowitz became pregnant; she later suffered a miscarriage which is unrelated to this action.

On or about November 18, 1985, Dr. Freedman informed the appellants that the Hospital had performed an enzyme linked immunosorbent assay ("ELISA") test of the donated placental blood which had been used in their in vitro fertilization procedure. The blood had tested positive for the Acquired Immune Deficiency Syndrome ("AIDS") antibody, HTLV–III. After receiving this information, appellant Robyn Lubowitz allegedly experienced mental distress and various physical ailments, including recurrent nausea, vomiting and diarrhea.

The Hospital then conducted additional blood tests on the placental donor and appellant. An ELISA test of appellant's blood was returned negative for the AIDS antibody on November 23, 1985. The Hospital also sent blood samples from appellant and the placental donor to Washington, D.C., so that another AIDS test, the Western Blot analysis, could be performed. On January 29, 1986, the placental donor's blood tested negative for the AIDS antibody, and on February 7, 1986, appellant's blood also tested negative.

---

1. The Hospital used placental serum (blood) obtained from women who had given birth at the Hospital. The "donors" were not told of the Hospital's use of the placenta in the in vitro fertilization program; it is not clear whether the Hospital had in place a formal screening process for choosing which placental serum would be utilized.

In answers to requests for admissions, appellants conceded that they "are aware of no facts, with the exception of the [results of the initial ELISA test], to support that the placental serum was infected with the AIDS virus" or that Robyn Lubowitz "was exposed to the AIDS virus during the [in vitro fertilization procedure]." Appellants have never tested positive for the AIDS antibody, nor has the child born to them on October 6, 1988. Appellees have maintained that the single positive result, obtained in the ELISA test performed on or about November 18, 1985, on the placental blood, was a false positive, and that Robyn Lubowitz was never exposed to the AIDS virus.

Appellants brought this action charging the appellees with: 1) negligent infliction of emotional distress; 2) intentional infliction of emotional distress; 3) negligent performance of undertaking to render services; 4) loss of consortium by both husband and wife; and 5) punitive damages.[2] Appellees filed a motion for summary judgment based on appellants' inability to prove actual exposure to the AIDS virus, and the motion was granted. This timely appeal followed.

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b). When ruling on a motion for summary judgment, the trial court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the movant. *Carns v. Yingling,* 406 Pa.Super. 279, 594 A.2d 337 (1991). With this standard in mind, we must decide whether appellants have stated a legally cognizable cause of action.

The two remaining counts in appellants' complaint are negligent performance of an undertaking to render services and negligent infliction of emotional distress. To prevail against a summary judgment motion under either count appellants must

---

**2.** The claims for intentional infliction of emotional distress and punitive damages, and Robyn Lubowitz' claim for loss of consortium, were dismissed on preliminary objections.

show that their claim is cognizable under the law. We conclude that under existing case law appellants have not suffered a compensable injury, and therefore their claim is not cognizable.

It is undisputed that appellants have never tested positive for the AIDS antibody. Moreover, although Robyn Lubowitz alleges that she suffered physical manifestations of emotional distress, the actual injury at issue is the "fear of AIDS." Whether such fear is a compensable injury is an issue of first impression in this Commonwealth. However, we are guided by decisions which involve similar "risk of contracting disease" claims. *See, e.g., Ottavio v. Fibreboard Corp.*, 421 Pa.Super. 284, 617 A.2d 1296 (1992); *Altiere v. Fibreboard Corp.*, 421 Pa.Super. 297, 617 A.2d 1302 (1992); *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992).

In *Ottavio*, the plaintiff filed an action against numerous manufacturers of asbestos products to recover for injuries allegedly sustained as a result of workplace exposure to asbestos. *Id.* at 286, 617 A.2d at 1297. Ottavio sought damages for pleural thickening and a fear of developing future diseases, including cancer, allegedly caused by exposure to asbestos. *Id.* An en banc panel of this court held that "Ottavio was entitled to recover compensation only for that disease, if any, which existed at the time of trial. He could not recover in an action for asymptomatic pleural thickening monetary damages for the risk of a future disease such as cancer." *Id.* at 296, 617 A.2d at 1302.

Likewise, the most that Robyn Lubowitz could aver in this case was that she "has a rational basis to believe she was exposed to the AIDS virus" because of the positive results of the initial test performed on the placental donor's blood. *Appellants' Brief* at 14. This simply is not enough. As in *Ottavio*, Robyn Lubowitz cannot recover, in her asymptomatic state, monetary damages for a risk or fear of developing AIDS in the future.[3]

---

**3.** Appellants argue that "there is no evidence *on record* to suggest that Lubowitz will never test positive for the HTLV–III antibody as a result of defendant's conduct." *Appellant's Brief* at 14 (emphasis in original).

We realize that there are factual questions with respect to the appellees' negligence and Robyn Lubowitz' actual physical harm.[4] Nonetheless, these factual issues are irrelevant under the circumstances of this case, where appellant's symptoms were not caused by the AIDS virus itself. Because there is no legally cognizable injury, there can be no recovery for the alleged negligence. We therefore affirm the trial court's grant of summary judgment in favor of appellees.

Order affirmed.

As was noted in *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa. 1990), "it is a medically accepted fact, however, that a person who has been infected will still test positive for the [AIDS] antibody during the latency period when no symptoms are evident, assuming the accuracy of the [AIDS] test." *Id.* at 288, citing *Morbidity and Mortality Weekly Report*, July 21, 1989, Vol. 38, No. S–7. Moreover, if Robyn Lubowitz eventually were to contract AIDS as the result of the events outlined in this case, she would have a cause of action for a compensable injury at that time. *See Ottavio, supra; Marinari, supra.*

4. Viewed in the light most favorable to appellant, her allegations of physical ailments tend to show that they were not merely "transitory, non-recurring physical phenomena, harmless in themselves," but rather "long continued [symptoms which] may amount to physical illness, which is bodily harm." Restatement (Second) of Torts § 436 A, comment c. However, for the reasons discussed above, we do not reach this issue.