## Millikan v. Holy Spirit Hospital

C.P. of Cumberland County, no. 95-3482 Civil.

*Darrell C. Dethlefs,* for plaintiff.
*Jayson R. Wolfgang,* for defendant.

BAYLEY, *J.,* February 9, 1996—Plaintiff, Barbara Millikan, filed a complaint against defendant, Holy Spirit Hospital. Plaintiff alleges that her blood was

drawn in a pre-admission procedure for surgery on her nose. The blood was sent to the Holy Spirit Hospital laboratory. During a post-surgery visit with her physician on July 8, 1993, the physician received a telephone call from an employee of the Holy Spirit Hospital laboratory informing him that the laboratory results of plaintiff's blood "tested positive for antibodies known to react with the human immunodeficiency virus [HIV] type 1 and 2." The physician informed plaintiff of the report. On the same day, plaintiff was informed of a second test, a Western Blot test, performed by the Holy Spirit laboratory on her blood confirming the presence of antibodies of the AIDS virus. Over the next couple of weeks, plaintiff and her husband and daughter were given a series of blood tests that came back negative for the AIDS virus. The results of the blood test and second confirming test reported to plaintiff from the Holy Spirit laboratory on July 8, 1993, were actually for tests performed on the blood of a person other than plaintiff. Plaintiff avers that Holy Spirit Hospital was negligent in testing the blood of someone else, and then reporting the results of those tests to plaintiff. She seeks damages for "severe, permanent injuries including humiliation, embarrassment, mental anguish and mental distress," and "loss of life's pleasures." Plaintiff also avers that she "was required to undergo additional testing and medical treatment which caused [her] to incur medical bills for which a claim is made."

Defendant filed a demurrer to plaintiff's complaint which was briefed and argued on January 31, 1996. A demurrer is to be granted only where, as a matter of law, there can be no recovery on the facts alleged. *Wurth by Wurth v. City of Philadelphia,* 136 Pa. Commw.

629, 584 A.2d 403 (1990). In *Lubowitz v. Albert Einstein Medical Center,* 424 Pa. Super. 468, 623 A.2d 3 (1993), the facts were:

"In August 1985, appellants participated in the hospital's in vitro fertilization program. An egg was removed from Robyn Lubowitz and was placed with a sample of her husband's sperm into a placental serum provided by an anonymous donor. The embryo was then implanted, and Robyn Lubowitz became pregnant, she later suffered a miscarriage which is unrelated to this action.

"On or about November 18, 1985, Dr. Freedman informed the appellants that the hospital had performed an enzyme linked immunosorbent assay (ELISA) test of the donated placental blood which had been used in their in vitro fertilization procedure. The blood had tested positive for the acquired immune deficiency syndrome ('AIDS') antibody, HTLV-III. After receiving this information, appellant Robyn Lubowitz allegedly experienced mental distress and various physical ailments, including recurrent nausea, vomiting and diarrhea.

"The hospital then conducted additional blood tests on the placental donor and appellant. An ELISA test of appellant's blood was returned negative for the AIDS antibody on November 23, 1985. The hospital also sent blood samples from appellant and the placental donor to Washington, D.C., so that another AIDS test, the Western Blot analysis, could be performed. On January 29, 1986, the placental donor's blood tested negative for the AIDS antibody, and on February 7, 1986, appellant's blood also tested negative." *Id.* at 469, 623 A.2d at 4. (footnote omitted)

The trial court granted the medical center's motion for summary judgment on plaintiff's causes of action

alleging negligent infliction of emotional distress and negligent performance of an undertaking to render services. The Superior Court of Pennsylvania affirmed, concluding:

"It is undisputed that appellants have never tested positive for the AIDS antibody. Moreover, although Robyn Lubowitz alleges that she suffered physical manifestations of emotional distress, the actual injury at issue is the 'fear of AIDS.' Whether such fear is a compensable injury is an issue of first impression in this Commonwealth. However, we are guided by decisions which involve similar 'risk of contracting disease' claims. See *e.g., Ottavio v. Fibreboard Corp.,* 421 Pa. Super. 284, 617 A.2d 1296 (1992); *Altiere v. Fibreboard Corp.,* 421 Pa. Super. 297, 617 A.2d 1302 (1992); *Marinari v. Asbestos Corp.,* 417 Pa. Super. 440, 612 A.2d 1021 (1992).

"In *Ottavio,* the plaintiff filed an action against numerous manufacturers of asbestos products to recover for injuries allegedly sustained as a result of workplace exposure to asbestos. *Id.* at 286, 617 A.2d at 1297. Ottavio sought damages for pleural thickening and a fear of developing future diseases, including cancer, allegedly caused by exposure to asbestos. *Id.* An en banc panel of this court held that 'Ottavio was entitled to recover compensation only for that disease, if any, which existed at the time of trial. He could not recover in an action for asymptomatic pleural thickening monetary damages for the risk of a future disease such as cancer.' *Id.* at 296, 617 A.2d at 1302.

"Likewise, the most that Robyn Lubowitz could aver in this case was that she 'has a rational basis to believe she was exposed to the AIDS virus' because of the

positive results of the initial test performed on the placental donor's blood. Appellants' brief at 14. This simply is not enough. As in *Ottavio,* Robyn Lubowitz cannot recover, in her asymptomatic state, monetary damages for a risk or fear of developing AIDS in the future.

"We realize that there are factual questions with respect to the appellees' negligence and Robyn Lubowitz' actual physical harm. Nonetheless, these factual issues are irrelevant under the circumstances of this case, where appellant's symptoms were not caused by the AIDS virus itself. Because there is no legally cognizable injury, there can be no recovery for the alleged negligence." *Lubowitz, supra* at 471-72, 623 A.2d at 5. (footnotes omitted)

In *Griffin v. American Red Cross,* 1994 U.S. Dist. LEXIS 16838 (E.D. Pa. November 24, 1994), plaintiff donated blood at the American Red Cross in anticipation of her upcoming hysterectomy. A representative of the Red Cross contacted plaintiff's surgeon a few weeks later and stated that plaintiff's blood had tested positive for HIV. The surgeon informed plaintiff of the test, but took another blood sample which, within 24 hours, tested HIV-negative. Plaintiff instituted suit against the Red Cross for negligent infliction of emotional distress. Citing *Lubowitz v. Albert Einstein Medical Center, supra,* the district court concluded that Pennsylvania law does not recognize a cause of action for negligent infliction of emotional distress based on a "fear of AIDS." Noting that this court is not bound by the decision of the district court plaintiff herein distinguishes *Lubowitz* by arguing in her brief that "she had no fear of contacting AIDS through a *possible* exposure as did the plaintiff in *Lubowitz;* " rather she "was told unequivocally that she had AIDS, not that she was at a greater risk or might develop this dreaded disease

at some uncertain time in the future." [1] That is a distinction without a *legal* difference because, as the district court stated in *Griffin,* where plaintiff was told that her blood tested positive for HIV: "The most [she] could allege was a 'rational basis to believe' that there was an exposure to the AIDS virus." Plaintiff here, as in *Griffin* and *Lubowitz,* cannot and does not allege that her symptoms are caused by the AIDS virus. Rather her symptoms were caused by a mistaken belief that she had HIV, which was corrected when subsequent tests of her blood showed that she was not HIV-infected. Plaintiff's claimed symptoms do not arise out of exposure to the disease itself; therefore, we agree with the district court, that under Pennsylvania law as set forth by the Superior Court, a fear of having HIV and of developing AIDS in the future, is not a compensable

---

1. What plaintiff means is that she was told unequivocally that she had the HIV virus, not AIDS.

2. Plaintiff notes some cases in other jurisdictions. In *Marchica v. Long Island Railroad Co.,* 31 F.3d 1197 (2d Cir. 1994), a FELA case, plaintiff incurred a puncture wound from a hypodermic needle hidden in a pile of refuse he was clearing out. Although never testing positive for HIV, he was allowed to recover on a claim for emotional distress without proving actual exposure or reasonable medical probability of later developing the virus. See also, *Castro v. New York Life Insurance Co.,* 588 N.Y.S.2d 695 (1991). In *Faya v. Almaraz,* 620 A.2d 327 (Md. 1993), the Court of Appeals of Maryland allowed a case to proceed in which the plaintiff claimed that her surgeon, who was infected with the AIDS virus, had a legal duty to inform her of that condition before operating on her, and, failing that, her fear of having contracted the AIDS virus from the infected surgeon constituted a legally compensable injury even though she had not shown HIV-positive status. The court made a review of cases in various jurisdictions that have differed on the question of recovery of damages for the fear of AIDS and attendant physical consequences absent an HIV-positive test.

injury. We are bound by *Lubowitz*.[2] If the law is to change in Pennsylvania, it must be pronounced by the Supreme Court of Pennsylvania. Plaintiff has not stated a cause of action for negligent infliction of emotional distress.[3]

Plaintiff has stated a claim for negligent performance of an undertaking to render services. If defendant tested the blood of another person and negligently reported to plaintiff the results of those tests, plaintiff may recover the medical costs that were necessary to determine that she was not HIV-positive. Her complaint seeks recovery of those costs, but does not set forth the costs with specificity. Accordingly, we will grant a demurrer to plaintiff's cause of action for negligent infliction of emotional distress, but allow plaintiff to file an amended complaint setting forth the costs associated with her cause of action for negligent performance for an undertaking to render services.

## ORDER

And now February 9, 1996, it is ordered:

(1) The demurrer to plaintiff's cause of action for negligent infliction of emotional distress, is granted.

(2) Plaintiff shall file an amended complaint setting forth the costs associated with her cause of action for negligent performance of an undertaking to render services.

---

3. Plaintiff has also failed to plead sufficient physical manifestations sufficient to constitute the physical harm necessary to sustain a cause of action for negligent infliction of emotional distress. *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 633 A.2d 605 (1993); *Houston v. Texaco Inc.,* 371 Pa. Super 399, 538 A.2d 502 (1988).