**John DOE, Appellant,**

v.

**PHILADELPHIA COMMUNITY HEALTH ALTERNATIVES AIDS TASK FORCE; Metpath DeKalb; Princeton Biomedical Laboratories, Inc., Bureau of Laboratories PA Department of Health; and Michael L. Silverman, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1999.

Filed Jan. 11, 2000.

Eliot H. Lewis, Philadelphia, for appellant.

Austin Hogan, Philadelphia, for appellees.

Before POPOVICH, STEVENS and MUSMANNO, JJ.

STEVENS, J.:

¶ 1 Appellant appeals from the order of the Court of Common Pleas of Philadelphia County, which dismissed with prejudice Appellant's complaint and all cross claims against Philadelphia Community Health Alternatives – AIDS Task Force (hereinafter "PCHA"). We affirm.

¶ 2 A review of the record reveals that Appellant filed a complaint against PCHA, Metpath DeKalb, Princeton Biomedical Laboratories, Inc.,[1] the Pennsylvania Department of Health—Bureau of Laboratories and, Dr. Michael Silverman, on April 9, 1996.

¶ 3 According to the complaint, in or about December, 1992, Appellant had an "unsafe sexual experience," which prompted him to request HIV testing at PCHA in January of 1993. Complaint at 2. According to PCHA, the results of this first test were indeterminate, and Appellant was advised that he should be retested. *Id.* at 3. Appellant's blood was drawn by PCHA for a second test sometime between January, 1993 and March, 1993, but PCHA informed Appellant that the results of the second test were also indeterminate. *Id.* PCHA advised Appellant to be tested a third

time, and informed him that the third test would take into consideration that Appellant was from Africa. *Id.* On or about March 30, 1993, PCHA told Appellant that he had tested positive for HIV, and referred him to Dr. Silverman for follow up and treatment. *Id.* PCHA did not advise Appellant to be retested, nor did Dr. Silverman have Appellant retested, although Dr. Silverman's records do not contain a laboratory report indicating that Appellant was HIV positive. *Id.* at 3–4. Dr. Silverman treated Appellant on seven occasions, beginning on April 7, 1993, and the treatment included testing his T-cell count, prescribing AZT, administering influenza vaccines, and recommending that Appellant participate in a clinical study for AIDS patients with tuberculosis. *Id.* at 4. When Appellant was screened for participation in the clinical study in or about May of 1994, it was discovered he was not HIV positive. *Id.* Subsequent retesting confirmed that Appellant was not positive for any type of HIV and does not have AIDS. *Id.*

¶ 4 As a result of the alleged negligence of the defendants, Appellant averred that he suffered night sweats, nausea, loss of sleep, skin lesions, rashes, recurring headaches, hair loss, scalp irritation, recurring crying fits, and loss of concentration, as well as extreme anxiety, depression, belief that he was going to die of AIDS within a few years, post-traumatic stress disorder, permanent lack of trust in medical providers, despondency, humiliation, and social isolation. *Id.* at 7–8.

¶ 5 On January 22, 1997, PCHA filed a motion for summary judgment, which was granted by the trial court on March 5, 1997. The order granting summary judgment was amended to include a determination of finality on April 16, 1997, and Appellant appealed the grant of summary judgment to the Superior Court, but the appeal was quashed because the trial court failed to certify the March 5, 1997 order as

---

1. By stipulation of the parties, all claims and crossclaims against Metpath DeKalb and Princeton Biomedical Laboratories have been dismissed with prejudice.

final within the required thirty days of entry of that order. On October 22, 1998, a settlement between Appellant and the remaining parties was reached, and the case was discontinued.

¶ 6 Appellant thereafter filed this timely appeal of the trial court's grant of summary judgment in favor of PCHA,[2] raising the following issues:

1. Should a plaintiff claiming damages for emotional distress, bodily harm, a year of medical treatment, restriction of lifestyle, and economic loss as the result of a defendant testing agency negligently telling plaintiff he was HIV-positive when his actual written test result was negative, be denied recovery for a year-long misdiagnosis of AIDS on the basis that his claim is for "fear of AIDS" which is not a compensable injury?

2. Did the plaintiff allege sufficient evidence of physical injury or impact, and/or other compensable damage to allow recovery for negligent infliction of emotional distress?

3. Does the foreseeable emotional trauma from the diagnosis of AIDS provide sufficient assurance and guarantee of the genuineness of the emotional distress to allow a claim for damages when a plaintiff has been negligently misdiagnosed?

Appellant's brief at 3.

▉▉▉ ¶ 7 We begin our analysis by setting forth the standard we follow when asked to determine the propriety of a grant of summary judgment:

Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that

there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in the light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law.

*Jones v. Snyder*, 714 A.2d 453, 455 (Pa.Super.1998) (citations omitted).

¶ 8 The reasoning behind the trial court's grant of summary judgment is contained in its 1925(a) opinion as follows:

We granted PCHA's Motion for Summary Judgment because we found that there is no recognized cause of action in Pennsylvania for "fear of AIDS" and because Plaintiff had not set forth a sufficient claim for negligent infliction of emotional distress.

In Pennsylvania, the cause of action for negligent infliction of emotional distress has been limited by court decisions. In order to recover, the Plaintiff must prove one of four elements: (1) that the Defendant had a contractual or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative. *See Brown v. Philadelphia College of Osteopathic Medicine*, [449 Pa.Super. 667,] 674 A.2d 1130 (Pa.Super.1996); *Fewell v. Besner*, [444 Pa.Super. 559,] 664 A.2d 577, 581 (Pa.Super.1995); *Armstrong v. Paoli Memorial Hospital*, [430 Pa.Super. 36,] 633 A.2d 605 (Pa.Super.1993), *appeal denied*, [538 Pa. 663,] 649 A.2d 666 (Pa.

2. The trial court submitted an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), but the certified record and accompanying docket sheet do not reflect that

Appellant was directed to file a statement of matters complained of on appeal pursuant to Rule 1925(b), and no such statement is contained in the record.

1994); *Nagy v. Bell Telephone Co.*, [292 Pa.Super. 24,] 436 A.2d 701 (Pa.Super.1981). In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate* and,*substantial* physical harm.

Were there no such limitations placed on the theory of negligent infliction of emotion distress, then any conduct that causes emotional upset to another would support a cause of action and a law suit. This could include any suggestion or advice given to one person by another, whether solicited or not, which the recipient finds upsetting.

In the case at bar, Plaintiff was not HIV positive and did not develop AIDS.

There was no allegation or proof that Plaintiff had a contractual or fiduciary relationship with PCHA. There was no proof that PCHA provided *medical treatment*, which would have put Plaintiff's cause of action within the realm of medical malpractice.

Plaintiff argued, however, that the "impact" element cited above was met because he was given two influenza vaccinations, which he contends he would not have received had he not been diagnosed as being HIV positive.

This court took judicial notice of the fact that influenza vaccine is commonly administered to many healthy individuals each fall in order to protect them from contracting the flu. The side effects that Plaintiff experienced were very minor in nature, and much less serious than the flu symptoms which the vaccine was designed to prevent. Hence, we concluded that the vaccinations and side effects, as a matter of law, did not constitute the "impact" required for a claim of negligent infliction of emotional distress. *See Gregorio v. Zeluck*, [451 Pa.Super. 154,] 678 A.2d 810 (Pa.Super.1996), in which Superior Court held that emotional distress from an unpleasant body odor did not constitute a sufficient "impact" to sustain a cause of action for negligent infliction of emotional distress.

Also, the psychosomatic symptoms that Defendant [sic] experienced were due to his *fear* of AIDS, and as such did not constitute an "impact." In *Lubowitz v. Albert Einstein Medical Center*, [424 Pa.Super. 468,] 623 A.2d 3 (Pa.Super.1993), Superior Court held that there could be no recovery for "fear of AIDS" where the Plaintiff had not developed the illness, and her symptoms were not caused by the AIDS virus itself.[3] *See also Milliken [Millikan] v. Holy Spirit Hospital*, 27 [Pa.] D & C 4 th 481 (1996)[4], where the court held that a Plaintiff who was falsely diagnosed as being HIV positive could not recover for

---

**3.** The *Lubowitz* appellant had undergone in vitro fertilization, a procedure which involved the implantation of a fertilized egg and donated "placental serum." The appellant was later informed that the serum had tested positive for AIDS, although subsequent testing revealed that neither the appellant nor the placental serum donor were HIV positive, and appellant did not, in fact, contract AIDS. Although the *Lubowitz* appellant sued for negligent infliction of emotional distress, alleging that she suffered physical manifestations of emotional distress, a panel of this Court found that the actual injury at issue was the "fear of AIDS." *Id*. at 5. Such an injury, the Court concluded, is not compensable under existing case law, and, therefore, the appellant had no cognizable claim. *Id*. As the Court succinctly stated, the appellant "cannot recover, in her asymptomatic state, monetary damages for a risk or fear of developing AIDS in the future."

**4.** In *Millikan*, the appellant was told she had AIDS after her test results were switched with results actually belonging to another person. The appellant alleged negligent infliction of emotional distress as a result of the mistaken diagnosis, averring that she suffered both physical and emotional injuries from it, but the Court of Common Pleas of Cumberland County, relying on *Lubowitz*, found that the appellant's symptoms did not arise out of exposure to the disease itself, and, therefore, under Pennsylvania law, were not compensable. *Millikan, supra* at 485. While we are not bound by the findings of the Court of Common Pleas, we are persuaded by its reasoning in this case.

emotional distress and the accompanying physical injury as a result of the mis-diagnosis.

Trial court opinion filed 4/9/99 at 4–6.

¶ 9 Our review of the record, the briefs of the parties, and the applicable case law convinces us that the trial court properly granted PCHA's motion for summary judgment.

¶ 10 Appellant here claims he suffers physical injuries and emotional distress, as enumerated above. The physical injuries alleged, such as sleeplessness and headaches, stem from Appellant's belief that he was HIV positive. "Fear of AIDS" claims are not cognizable in the Commonwealth of Pennsylvania. *Lubowitz, supra.* Further, we cannot conclude that two influenza vaccines, which were not the cause of any lasting physical or emotional effects, are sufficient to bootstrap Appellant's claim that he suffered the "physical impact" necessary to support a claim of negligent infliction of emotional distress.

¶ 11 Because we find the trial court correctly concluded that the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and that PCHA was entitled to judgment as a matter of law, we find no abuse of discretion in the grant of summary judgment in PCHA's favor.

¶ 12 Affirmed.