J-A15018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RONDA ROARING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GUTHRIE MEDICAL GROUP, ROBERT | : | No. 1192 MDA 2024 |
| PACKER HOSPITAL, HANG T. DANG, | : | |
| DO, AND DAVID BERTSCH, MD | : | |

Appeal from the Order Entered July 31, 2024
In the Court of Common Pleas of Bradford County
Civil Division at No:  2016-MM-0002

BEFORE: BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:          **FILED: DECEMBER 22, 2025**

Appellant, Ronda Roaring, appeals *pro se* from the July 31, 2024, order granting summary judgment in favor of Appellee, Hang T. Dang, DO ("Dr. Dang").  That order also rendered final the trial court's entry of *non pros* on Appellant's causes of action against the remaining Appellees, Guthrie Medical Group, Robert Packer Hospital, and David Bertsch, MD.[1]  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On January 20, 2014, a biopsy of the right breast of [Appellant] was conducted by Cora Foster, M.D. of Surgical

---

[*] Former Justice specially assigned to the Superior Court.

[1] Only Dr. Dang has filed a brief.

Associates of Ithaca. The Cayuga Medical Center pathology report stated a finding of malignant-lobular carcinoma.

On January 30, 2014, [Dr. Dang] discussed an operation to remove the carcinoma located in the right breast. Dr. Dang allegedly indicated that she would create a horizontal incision of about three to four inches in length to remove the entire breast. An informed consent form (hereinafter referred to as "ICF") was filled out indicating the operation to be a 'right total mastectomy with sentinel lymp [sic] node biopsy possible axillary dissection.' [Appellant], worried about getting lymphedema, told Dr. Dang that she did not want her axillary nodes removed. Dr. Dang allegedly replied that the axillary dissection was there as a precaution in case the sentinel nodes were found to be cancerous. [Appellant] asked for a copy of the ICF, but never received it.

Follow-up appointments were held pre-surgery on February 1, 10, and 11 of 2014. On February 11, 2014, [Appellant] allegedly requested that the sentinel node biopsies be performed prior to the surgery.

On February 19, 2014, [Appellant] underwent surgery. Just prior to the surgery, she again allegedly asked Dr. Dang to conduct the sentinel node biopsy prior to the surgery. Dr. Dang allegedly told [Appellant] that the biopsy would be easier to perform during surgery, to which [Appellant] allegedly gave verbal permission for the removal of only two sentinel nodes [one of the nodes was found to be cancerous]. [Appellant], in her complaint, alleges that Dr. Dang removed her axillary nodes and sentinel nodes without first performing a biopsy on her sentinel nodes. Further, the incision made by Dr. Dang was an elliptical incision of about eight and a half inches in length running from the sternum to the armpit of [Appellant] instead of a horizontal incision, a change in procedure allegedly based on the position of the tumor.

[Appellant] alleges emotional distress over the surgery and worry about lymphedema. She asked for a different doctor for post-operation appointments, and was assigned to [Appellee] David Bertsch, M.D. (hereinafter referred to as "Dr. Bertsch"). She saw Dr. Bertsch four times[....] [Appellant] asked Dr. Bertsch about the side effects of the surgery, including a flap of skin, a lump of muscle on the right side of her chest wall, and numbness in her upper arm, shoulder and part of her back. The lump of muscle and the numbness were allegedly indicated to be permanent and normal for removal of axillary nodes. A post-

operation CAT scan also revealed the use of surgical clips, which [Appellant] alleges were utilized without her consent.

Trial Court Opinion, 10/25/24, at 2-4.

Appellant, proceeding *pro se*, filed this action on February 16, 2016. In the trial court's words, the "counts inferred from the complaint appear to include (1) lack of informed consent/medical battery against Dr. Dang, (2) medical negligence against Dr. Bertsch, (3) and vicarious liability against Appellees Guthrie Medical Group and Robert Packer Hospital." ***Id.*** at 4. She filed an amended complaint on January 31, 2017, after the trial court sustained Appellees' preliminary objections to the original complaint. All defendants filed preliminary objections to the amended complaint.

In an order and opinion dated March 30, 2017, the trial court granted Appellant an additional 30 days to file certificates of merit[2] for her professional negligence claims. Appellant ultimately failed to file certificates of merit with a written statement signed by a licensed professional; instead she signed her own certifications of merit, arguing that nothing more was necessary in this case. In an order dated January 15, 2018, the trial court entered a judgment of *non pros* as to all claims except for Appellant's medical battery claim against Dr. Dang, that being the only claim that did not require a certificate of merit. The remaining medical malpractice claims were *non prossed* because Appellant persisted in her refusal to provide certificates of merit.

---

[2] ***See*** Pa.R.Civ.P. 1042.3.

- 3 -

The medical battery claim alleged, in substance, that Appellant suffered mental and emotional distress stemming from the dissection of her axillary nodes, a procedure to which she did not consent. In specific, Appellant alleged that she feared contracting lymphedema—a disease that causes swelling in the arms and legs. According to the complaint, the axillary dissection put Appellant at greater risk for lymphedema.

Dr. Dang eventually filed a motion for summary judgment on the medical battery claim, alleging that no damages were recoverable. Per the order on appeal, Appellant's initial *pro se* filing in opposition to Dr. Dang's summary judgment motion was nonresponsive to the damages issue. Order, 7/31/24, at ¶¶ 3-4. At oral argument on the motion, the trial court granted Appellant an additional 21 days to identify evidence in the record that supported her claim for damages. *Id.* at ¶ 5. Appellant filed a request for a further extension of time, which the trial court granted. *Id.* at ¶ 6. Appellant subsequently filed two amended responses to Dr. Dang's summary judgment motion. The trial court thereafter granted Dr. Dang's summary judgment motion, reasoning that Appellant's fear of contracting lymphedema is not a legally cognizable injury. *Id.* at ¶¶ 10-11. This timely appeal followed.

"On appellate review, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Valley Nat'l Bank v. Marchiano***, 221 A.3d 1220, 1222 (Pa. Super. 2019). "But the issue as to whether there are no genuine issues as to any material

fact presents a question of law, and therefore, on that question our standard of review is de novo." ***Id.*** "This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." ***Id.***

The only cause of action Appellant addresses in her *pro se* briefs is her battery claim, and the only case law she cites addresses the compensability of emotional damages.[3] As noted above, Appellant argues that the dissection of her axillary nodes was a touching to which she did not consent, and that she now lives in fear of developing lymphedema because of it. Appellant's *Pro Se* Brief at 5, 13, 18-19. Our Supreme Court has explained that this cause of action sounds in battery: "the informed consent doctrine derives from the very fact that surgical or operative procedures, if not consented to, amount to a battery." ***Montgomery v. Bazaz-Sehgal***, 798 A.2d 742, 748 (Pa. 2002). As such, negligence principles do not apply to a battery claim. ***Id.*** at 749. For a cause of action in battery, "there need be no physical injury, but only some

---

[3] Appellant's brief addresses eleven assertions of error, which we will not reproduce verbatim. We observe that *pro se* litigants are required to comply with applicable procedural rules. ***Smithson v. Columbia Gas of PA/NiSource***, 264 A.3d 755, 760 (Pa. Super. 2021) (citations omitted). Pennsylvania Rule of Appellate Procedure 2119 requires citations to pertinent authority and to the record in support of the arguments set forth in an appellate brief. Pa.R.A.P. 2119(b), (c). Appellant's brief contains minimal citation to authority. We confine our analysis accordingly.

contact; the matter of permission goes to the quality of the contact, and consent to being so touched is a defense." *Id.*

In *Montgomery*, the plaintiff underwent surgery to clear a plaque blockage in his penis. The defendant surgeon chose, during the surgery, to install a prosthesis in the plaintiff's penis in order to spare the plaintiff a second surgery. The implant was not discussed as a possibility prior to the surgery, and it was impossible to remove afterward. Our Supreme Court explained that the plaintiff sufficiently alleged a battery:

> Appellees unquestionably established a prima facie case of battery by introducing evidence that [defendant] made physical contact with [plaintiff]. Specifically, [plaintiff] testified that, during consented-to revascularization surgery on [plaintiff], [defendant] implanted a penile prosthesis without [plaintiff's] knowledge or consent. This contact left a palpable reminder in the form of the prosthesis, which [plaintiff] discovered only after he awoke. This evidence was sufficient to allow a jury to pass on the question of whether [defendant] committed a battery.

*Id.* at 749–50.

The *Montgomery* Court held that the emotional damages the plaintiff suffered from the injury were compensable: "It has long been the law that damages for emotional injuries are compensable, even in cases not involving negligence, where there is some evidence of physical contact or injury, even if the physical contact or injury is trivial in nature." *Id.* at 750. Unlike the physical symptoms allegedly caused by the prothesis, which required expert testimony on causation, the plaintiff's alleged emotional injuries were

"obviously and clearly connected" to the unwanted prothesis and thus could be established by lay testimony. *Id.* at 751.

Here, Dr. Dang conceded for purposes of summary judgment that Appellant produced some evidence of lack of consent but argued that Appellant cannot recover damages. Appellant counters that her claim for emotional damages is viable under *Montgomery* and *Botek v. Mine Safety Appliance Corp.*, 611 A.2d 1174 (Pa. 1992). Appellant's *Pro Se* Reply Brief at 12-13.[4] In *Botek*, the plaintiff, a firefighting trainee, wore an air tank mistakenly filled with carbon monoxide instead of oxygen. Appellant lost consciousness and was hospitalized for six hours, during which time he experienced headaches and nausea. He experienced insomnia for six months afterward, claiming he developed a fear of falling asleep because of how close he came to dying. He remained emotionally unstable seven years after the incident at the time of his jury trial.

The defendant admitted liability for negligence, and after a trial on damages the plaintiff won a verdict in excess of $500,000.00. This Court reduced the award to $783.05, representing the plaintiff's out-of-pocket medical expenses. Our Supreme Court reversed:

> It is simple black letter law that a tortfeasor must take its victim as it finds him. Plaintiff–Appellant suffered objective, measurable, observable physical injuries here (although they were relatively mild). All of the consequent psychological and

---

[4] Appellant's Reply Brief is titled "Corrections and Comments to Appellee's Brief."

emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called 'impact rule.'[5]

*Id.* at 1177. The Supreme Court concluded that it was within the purview of the jury to compensate the plaintiff for his emotional suffering in that case.

Appellant argues, based on **Botek**, that a triable issue of fact exists as to her fear of contracting lymphedema.[6] The trial court disagreed, reasoning that fear of contracting an illness is not a cognizable injury in Pennsylvania. The trial court cited **Lubowitz v. Albert Einstein Med. Ctr.**, 623 A.2d 3 (Pa. Super. 1993), in which this Court held that a plaintiff's alleged fear of contracting AIDS after learning that infected blood was used in her in vitro fertilization was not enough to allege negligence causes of action. The plaintiff tested negative and did not actually contract the disease. This Court rejected the plaintiff's assertion that she had a rational basis for her fear. The plaintiff was not entitled to recover damages, while in an asymptomatic state, for her fear of developing the disease in the future. **Id.** at 5.

Though the procedural posture and the nature of the cause of action in this case is distinct from that of **Lubowitz**, Appellant offers no persuasive argument as to why **Lubowitz** should not apply here. Likewise, Appellant

---

[5] Under the impact rule, no recovery is available for "fright, nervous shock or mental or emotional distress unless it was accompanied by a physical injury." **Kazatsky v. King David Mem. Park, Inc.**, 527 A.2d 988, 992 (Pa. 1987).

[6] We are cognizant that Appellant alleged other forms of fear in the court below. The argument in her brief and reply brief is limited to fear of contracting lymphedema, and we limit our analysis accordingly.

does not explain how **Bortek** supports her claim for fear of contracting lymphedema in a medical battery case.

In our analysis of Appellant's *pro se* argument, we are mindful of the following:

> [A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, pro se status generally confers no special benefit upon an appellant. [A] pro se litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court. [A]ny layperson choosing to represent himself [or herself] in a legal proceeding must, to some reasonable extent, assume the risk that his [or her] lack of expertise and legal training will prove his [or her] undoing.

**Smithson v. Columbia Gas of PA/NiSource**, 264 A.3d 755, 760 (Pa. Super. 2021) (citations omitted). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002). "Without a reasoned discussion of the law against which to adjudge the [appellant's] claims, our ability to provide appellate review is hampered[, and] [i]t is not this Court's function or duty to become an advocate for the appellant." **Id.**

The rule applied in **Lubowitz** arose from asbestos litigation. **See Lubowitz**, 623 A.2d at 5 (citing **Ottavio v. Fibreboard Corp.**, 617 A.2d 1296 (Pa. Super. 1992)). The rule forbade claims for fear of developing cancer but permitted asbestos plaintiffs to file a new cause of action if and when they developed cancer. The **Lubowitz** Court held that the same rule precluded a

cause of action for negligent infliction of emotional distress/fear of contracting HIV.

We have engaged in a liberal reading[7] of Appellant's *pro se* brief and reply brief and found little in the way of developed legal argument other than a few case citations with short descriptions of the holding in the cases. If Appellant wished to argue, in light of **Montgomery** and/or **Bortek**, that the **Lubowitz** rule does not apply to a medical battery cause of action, she needed to provide a reasoned discussion of the law on that point. She did not, and we therefore have no grounds upon which to disturb the trial court's order.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/22/2025</u>

---

[7] We observe, also, that the trial court gave a liberal reading to Appellant's complaint, and throughout the lengthy procedural history of this case the trial court granted Appellant several extensions of time to aid Appellant in her attempts to comply with applicable procedural rules.